UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PEIQING CONG, RI CONG, WU CONG, | § | |
| XINGHU DU, XINGMIN DU, XINGTAO DU, | § | |
| YIWEI GUAN, YECAI HE, JIFA LIU, | § | |
| BAOXIN QU, BAOZHENG QU, KUI QU, | § | |
| MINKUI QU, RENKUI QU, SHUSHENG QU, | § | |
| TIANKUI QU, WEILI QU, XINGZHANG QU, | § | CIVIL ACTION NO. _____ |
| YONGLI QU, YONGSUI QU, YONGXIN QU, | § | |
| ZHENQUAN QU, ZHENSHUANG QU, | § | JURY TRIAL DEMANDED |
| JIAN SUN, MAOKUN SUN, FUJUN TAN, | § | |
| CHUANLIANG WANG, DEJUN WANG, | § | |
| SHUGUO WANG, and WEIZHENG YU, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| CONOCOPHILLIPS COMPANY, | § | |
| | § | |
| Defendant. | § | |

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

NOW COMES Plaintiffs, by and through their attorneys, and allege the following upon personal knowledge as to themselves and their own acts, and upon information and belief as to all others matters.

## PARTIES

1.      Plaintiffs are Chinese citizens and residents of the Shandong province of the People's Republic of China.  Plaintiffs work as fishermen on the Bohai Sea.  These fishermen were adversely affected by the defendant oil companies' spills in the Sea.  Specifically, the plaintiffs are: Peiqing Cong, Ri Cong, Wu Cong, Xinghu Du, Xingmin Du, Xingtao Du, Yiwei Guan, Yecai He, Jifa Liu, Baoxin Qu, Baozheng Qu, Kui Qu, Minkui Qu, Renkui Qu, Shusheng Qu, Tiankui Qu, Weili Qu, Xingzhang Qu, Yongli Qu, Yongsui Qu, Yongxin Qu, Zhenquan Qu,

Zhenshuang Qu, Jian Sun, Maokun Sun, Fujun Tan, Chuanliang Wang, Dejun Wang, Shuguo Wang, and Weizheng Yu.

2.     Defendant is jointly engaged in the extraction of oil via operations at the Peglai 19-3 oil field in the Bohai Sea.  The defendant's operations caused massive oil spills into the Sea that affected and continue to affect the fishermen plaintiffs.  Specifically, the defendant is ConocoPhillips Company ("ConocoPhillips"), a Delaware oil company with a principal place of business in Houston, Texas, and a Texas registered agent: United States Corporation Company, 211 East 7th Street, Suite 620, Austin, Texas, 78701.

## JURISDICTION AND VENUE

3.     Because some of these claims arise under federal law and international treaties, this Court has subject matter jurisdiction over these claims as a federal question, 28 U.S.C. § 1331, and diversity of citizenship, 28 U.S.C. § 1332(a)(2).  Plaintiffs are citizens of China. Defendant ConocoPhillips is a citizen of Texas.  The matter in controversy for each plaintiff, exclusive of interest and costs, exceeds the sum or value of $50,000.

4.     Because some of these claims are brought by aliens under tort law, where the tort was committed in violation of the law of nations or a treaty of the United States, this Court has jurisdiction under the Alien Tort Claims Act, 28 U.S.C. § 1350.

5.     Because the plaintiffs bring related state law claims as supplemental claims arising from the same controversy, this Court has subject matter jurisdiction under 28 U.S.C. § 1367(a).

6.     Because defendant ConocoPhillips resides in Houston, Texas, venue is proper in the Southern District of Texas. 28 U.S.C. §§ 1391(a) and (b).  The defendant has its principal place of business in this judicial district, and continuously and systematically transacts business

in this district.  A substantial part of the tortious acts and omissions giving rise to this Complaint took place in this judicial district.  The policies, procedures, and decisions relating to oil exploration and drilling in China were set and made in Texas.

## INTRODUCTION

7.     This suit is the only chance a group of fishermen has to get justice for the devastating effect on their lives of a series of massive oil spills.  The oil spill damage covers an area six times the size of Singapore, and was caused by an American company's oil extraction operations in China's Bohai Sea.

8.     Plaintiffs enter this American court only because the Chinese government has blocked access to its own court system.  Initially, the Chinese government's State Oceanic Administration tried to conceal the Bohai Sea spills, but after a month suppressing the information, the government was forced to admit the leak when the public was tipped off anonymously.  Even after that, the defendant has been unable to stop the leak; as a result, for months, oil and waste have continued to gush into the Sea.  For the poor and relatively powerless Shandong fishermen, there is no meaningful opportunity to challenge the polluting by the American company in Chinese courts.  In China's court system, an injured party must *ask* a Chinese government court for permission to bring a suit.  The Shandong fishermen asked for permission to sue, but unsurprisingly, the Chinese government court has blocked the suit.  A U.S. State Department report previously commented on the "lack of due process in [Chinese] judicial proceedings, [and] political control of courts and judges."  Interestingly, the Chinese court neither officially accepted nor rejected the suit, in spite of Chinese law's requirement that a court do so within seven days of the suit's filing, and this locks the fishermen out of the courthouse without even giving them the dignity of a perfunctory consideration.

9.     The Chinese fishermen have one last recourse: the robust American justice system, which—in stark contrast to the Chinese court system—elevates personal rights over government caprice.  Here, the Chinese fishermen have been injured by an American company, which made critical decisions in America, and which led to the fishermen's damages.  The fishermen pray that the open, principled, rights-based court system in the United States will trump the closed, capricious character of the Chinese courts, and prevent the American company from getting away scot-free.

## FACTS

10.     The Bohai Sea is an important source of scallops and other seafood for Chinese fishermen who rely on the Sea to sustain their families.

11.     Each year, the plaintiff fishermen purchase sea cucumber seed and seed the hatcheries in the Bohai Sea.  The plaintiffs also "plant" mature, fertile scallops in the Sea to sustain and propel the scallop stock.

12.     Plaintiffs have invested in aquaculture hatcheries in the Bohai Sea and have a property right or a quasi-property right in the Bohai Sea sea cucumber, scallop, and other aquaculture hatcheries.

13.     The Bohai Sea also has large oil and gas reserves beneath it.

14.     China National Offshore Oil Corp. ("CNOOC") and ConocoPhillips have agreed to invest in, and jointly develop, the Penglai 19-3 oil field in the Bohai Sea.  The Penglai 19-3 oil field is China's largest offshore oilfield, and the joint operations include six platforms at the field.

15.     On its website, the defendant promotes its operations in Bohai Bay as "one of the largest capital projects in ConocoPhillips' history."

16. ConocoPhillips China Inc. is a wholly owned subsidiary of ConocoPhillips.

17. ConocoPhillips promotes itself on its website as "operator" at the Bohai Bay operations.

18. On June 4, 2011, it was discovered that two platforms at the Penglai 19-3 field were leaking oil and oil-based drilling mud into the Bohai Sea.  It would later come to light that there are many spills, including some that are ongoing.

19. The Chinese government's State Oceanic Administration ("SOA")—which is the arm of China's Ministry of Land and Resources that is tasked with permitting, regulating the coastal zone, and environmental protection—initially tried to cover up the spills.  There was a month-long delay before news of the leak was released, and this came only after the public was tipped off anonymously.

20. On July 5, SOA classified 840 square kilometers of seawater near the Penglai 19-3 oil field as Inferior Grade IV.  The oil concentration value in the seawater was 40 times greater than the historical background value.  The maximum concentration value was 86.4 times of the historical background value.

21. Despite SOA's finding, the defendant initially continued to operate, causing more oil to spill into the Bohai Sea.

22. On July 13, 2011, defendant ConocoPhillips admitted that "seepage" was observed from the "ConocoPhillips-operated Peng Lai B Platform."  As a result, "ConocoPhillips responded quickly to both events and mobilized extensive clean-up equipment, facilities and personnel…."  The defendant also promised that "ConocoPhillips will continue to work diligently and safely to finalize clean up activities and will be implementing additional reservoir management and field operating procedures to eliminate risks of additional releases."

23.     On July 13, 2011, defendant ConocoPhillips announced that "SOA instructed ConocoPhillips to suspend production from Platforms B and C."

24.     The Bohai Sea is a semi-closed sea which has a low degree of water exchange with the rest of the Yellow Sea.  As a result, oil spilled in Bohai is not readily dispersed or diluted, as would oil spilled in other waters.

25.     On August 19, 2011, ConocoPhillips issued a statement that estimated that "115 cubic meters (700 barrels) of oil were released into the sea and 400 cubic meters (2,500 barrels) of mineral oil based drilling mud (MOBM) were released onto the seabed."  "The June 17 release of oil and MOBM from the Platform C-20 well was completely stopped within 48 hours and the well was permanently plugged."  "Droplets of oil have recently been observed seeping intermittently from a small area on the seabed near Platform C.  These are being recovered as they occur and the cause is under investigation."  The press release added that "we have no evidence that any of the oil sheen itself made it to shore or soiled beaches…."

26.     On August 20, 2011, the state news agency reported that nine new oil spill sources were found in the Bohai Sea.

27.     On August 26, 2011, SOA described the spill as "the most serious marine ecological incident in China."

28.     On August 31, 2011, ConocoPhillips submitted a report to the SOA declaring that it had already sealed off the leaks.

29.     On September 6 and 18, 2011, the defendant ConocoPhillips announced the Bohai Bay Compensation Fund and an environmental fund (the "Funds"), and noted that ConocoPhillips "has worked to design both funds to meet the long-term needs of communities in the Bohai Bay region." ConocoPhillips also announced that "This fund will be designed to

address ConocoPhillips' responsibilities in accordance with relevant laws of China and to benefit the general environment in Bohai Bay."  That day, ConocoPhillips also announced that it "takes these actions in recognition of its obligations to the people and the government of China, and as part of its commitment to a long term relationship with them. ConocoPhillips will work cooperatively with the appropriate governmental authorities in regard to these funds."  Finally, on the same day, the defendant announced that it "is currently in the process of implementing plans to depressurize the reservoir and take additional precautionary measures to prevent these incidents from recurring.  ConocoPhillips is also preparing a new marine Environmental Impact Assessment and updating the Overall Development Plan as part of a phased recovery program."

30.     ConocoPhillips designed, negotiated, and implemented the two Funds.

31.     On September 18, 2011, ConocoPhillips announced its spill estimate of "approximately 700 barrels (115 cubic meters) of oil into Bohai Bay and approximately 2,500 barrels (400 cubic meters) of mineral oil-based drilling mud (MOBM)," which is a grand total of approximately 440 tons.

32.     POSCO Research Institute reported that the Chinese Research Academy of Environmental Sciences (CRAES) estimates that at least 50,000 tons of oil has been spilled into the sea.

33.     The spill's impact to Bohai Bay is particularly acute because the bay is very shallow and has little circulation to dilute the contamination.

34.     On November 10, 2011, the North Sea Branch of SOA's monitoring report indicated that oil continued to leak from Platform C.

35.     On November 11, 2011, SOA announced that an area of 6,200 square kilometers of water was polluted with oil, and classified this issue as a serious oil spill accident in the sea.

36.     It was reported that sampling by the Ministry of Agriculture performed in July and August found that oil droplets linked to the Penglai 19-3 oil spills were found in the coastal cultivation areas Liaoning, Hebei, and Tianjin.

37.     On November 18, 2011, Jia Fangyi filed suit in Quingdao Marine Court on behalf of fishermen from the Shandong province.  In China, a court has the discretion to accept or reject a case.  The fishermen's petition asked the court "to accept the case according to the laws, to hear the case openly, fairly and impartially, to accept the 30 plaintiffs' requests, and to protect the legitimate rights and interest of the fishermen who suffered damages of pollution."  The Quingdao Marine Court has not accepted or rejected the suit, even though the court is supposed to reject or accept the case within seven days under Chinese civil procedure law.  The Quingdao Marine Court is notorious for blocking lawsuits.

38.     Mr. Jia submitted a request to the Quindao Marine Court asking the court to collect monitoring records and testing results from government agencies, but the court has not done so.

39.     Mr. Jia requested the official report produced by SOA, but was denied access.

40.     On December 13, 2011, SOA investigated more spills "still occurring" at the site.

41.     On December 16, 2011, ConocoPhillips China announced that it had conducted water quality tests and a coastal investigation, and found little or no evidence of environmental damage.

42.     On December 21, 2011, the defendant ConocoPhillips reported on its website that "'ConocoPhillips takes responsibility for the two incidents in June,' said Jim Mulva, ConocoPhillips chairman and chief executive officer."

43.     In April 2012, ConocoPhillips reached an agreement with Chinese regulators to resolve pending government claims related to the Bohai Sea spills; however, this agreement did not include the claims of the plaintiffs in this matter.

44.     Oil has been spotted at Nanhuangcheng Island, in Yantai (Shandong province), where there is "dead seaweed and rotting fish."

45.     The crude oil at the Penglai 19-3 oil field is heavy sweet high acid crude oil.  It is one of the world's highest acid value crude oil varieties.  It has 2% of sulfur.  Its average acid value is 5.  It also has a high content of heavy metals and salts.  Heavy naphthenic acid accounted for 48% of oil acid.  It has particularly strong corrosive power.

46.     As a result of the defendant's actions and inactions, the nature of the oil spilled, and the Sea's characteristics, there was a sharp deterioration of the quality of the Bohai Sea water, and a corresponding die-off of micro-organisms and plankton.  Further, scallops' habitat was destroyed, and a large amount of the Bohai Sea's scallops and other seafood died, stopped growing, or have grown abnormally slow.

47.     The Chinese court system is characterized by a lack of due process in judicial proceedings, and political control of courts and judges.  The fishermen have no meaningful or adequate remedy because they have been deprived of all remedies and treated unfairly.  The case hangs in limbo—neither rejected nor accepted by the Chinese courts—which cuts off the fishermen from the court system entirely.  For the fishermen, the court system is clearly inadequate and unsatisfactory to address their damages.  The fishermen cannot get a jury trial nor even an official determination that they should or should not be provided one.  There is a patent lack of impartiality and independence in the Chinese court system.

48.     Some of the defendant's conduct in Texas gave rise to the injury sustained by the plaintiffs in China.

49.     The defendant made significant funding, budgeting, and operational decisions at corporate headquarters in Texas in furtherance of profit enhancement and which led to the activities that caused the damage in this matter.

50.     Upon information and belief, decisions regarding the operations, the spills, the Funds, and the response actions were discussed and made in Houston, Texas.

51.     Fishermen can sue for damage to fish stocks on which they rely to make a living. *State of La. ex rel. Guste v. M/V TESTBANK*, 752 F.2d 1019 (5th Cir. 1985).

52.     Under the Regulations of the People's Republic of China on the Exploitation of Offshore Petroleum Resources in Cooperation, Article 8, foreign contractors bear prospecting and exploitation risks.

53.     Under the Tort Liability Law of the People's Republic of China, Article 8, joint and several liability is applicable where two or more parties jointly commit a tort.

54.     Under the Environmental Protection Law of the People's Republic of China, Article 41, polluters are subject to strict liability.

55.     Under Tort Liability Law of the People's Republic of China, Article 65, polluters assume tort liability for harm caused by environmental pollution.

56.     Under the Regulations of the People's Republic of China on the Exploitation of Offshore Petroleum Resources in Cooperation, Article 22, oil company operators and subcontractors must comply with environmental protection and safety laws, and must protect fishery resources and other natural resources, and prevent the environment, including the seas, from being polluted or damaged by their operations.

57.     Under general principles of the Civil Law of the People's Republic of China, Article 58, Sections 4 and 5, acts are null and void if they are performed through malicious collusion and are detrimental to the interest of the state, a collective, or a third party, as well as acts that violate the law or the public interest.

58.     Under Tort Liability Law, Article 66, and Civil Procedure Law, Articles 108 and 112, of the People's Republic of China, a court must accept or reject an environmental damages case presented to it within seven days.

59.     Because ConocoPhillips China Inc. is a wholly owned subsidiary of ConocoPhillips, and because ConocoPhillips had the right and power to direct and control the means and manner of ConocoPhillips China Inc.'s actions, and because ConocoPhillips exercised this right and power, ConocoPhillips is fully liable for torts and liabilities of ConocoPhillips China Inc. under agency principles and the doctrine of *respondeat superior*.

60.     ConocoPhillips' involvement in the operations, spills, clean-up, relations with government regulators, payment of fines, public pronouncements accepting responsibility for the spill, and its design and implementation of compensation and environmental funds, demonstrate a virtual abandonment of separateness from its wholly owned subsidiary, ConocoPhillips China Inc.

61.     ConocoPhillips was not an independent entity from ConocoPhillips China Inc., in part because ConocoPhillips exhibited a virtual total disregard of its subsidiary.

62.     ConocoPhillips' public pronouncements, and its actual control and activities, demonstrate its virtual total disregard of its subsidiary, ConocoPhillips China Inc.

63.     ConocoPhillips China Inc. is the alter ego and mere adjunct of defendant ConocoPhillips.  ConocoPhillips China Inc. is simply the name and conduit through which the parent, ConocoPhillips, conducts its business.

64.     ConocoPhillips' actions warrant piercing of the corporate veil under agency principles and because ConocoPhillips is the alter ego of ConocoPhillips China Inc.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### Claims Arising from Negligence, Negligence Per Se, and Gross Negligence

65.     Plaintiffs incorporate by reference all other paragraphs of this Complaint.

66.     Through its actions and inactions, the defendant was negligent and grossly negligent in the drilling, construction, and operation of the Penglai 19-3 oil field wells such that oil and waste from the operations were discharged in a way that injured the plaintiffs.

67.     The actions and inactions described above that caused damage to the plaintiffs were a proximate result of the negligence, gross negligence, and fault of the defendant, through its agents, servants, and employees, which are more particularly described as follows:

a.     Failure to adequately perform duties that included duties to repair, maintain, and replace oil extraction systems at the Penglai 19-3 oil field;

b.     Failure to take precautions to prevent environmental contamination;

c.     Failure to apply separate zone water flooding technology in its oil production system;

d.     Failure to promptly respond to and mitigate the spills;

e.     Improper design and negligent construction of the well;

f.     Improper design and negligent construction of the cement works;

g.      Failure to adequately monitor leaks;

h.      Failure to warn and inform persons in the area of the contamination risk;

i.      Improper design and negligent drilling of the well;

j.      Failure to adequately train employees;

k.      Creation of a public health and environmental hazard subjecting the plaintiffs and the public to the present and potential environmental and health hazards thereby violating the plaintiffs' and the public's right to be secure in their persons and property; and

l.      Any and all other acts of negligence or omissions that may be demonstrated at trial of this matter.

68.      Defendant owed a duty to the plaintiffs to conduct operations so as not to pollute the Bohai Sea fish stocks.  Defendant breached that duty.  The breach proximately caused injury to the plaintiffs.  For this reason, the defendant is liable to the plaintiffs for negligence.  Further, the defendant had a duty to inform the public and the plaintiffs about the danger caused by the oil spills.  Once the defendant spoke publicly on the subject, it was also obligated to speak the truth and not omit critical facts.  The plaintiffs reasonably relied on the defendant's pronouncements to the plaintiffs' detriment.

69.      Several Chinese laws and international laws establish legislatively imposed standards of conduct applicable to the defendant in this context.  The purpose of these laws is to afford protection to the class of persons to which the plaintiffs belong, from the hazards involved in the context of oil spills.  These laws include, but are not limited to, the 1973 International Convention for the Prevention of Pollution from Ships, as amended in 1978 ("MARPOL 73/78"), and more particularly Regulation 21(c) of Chapter II of Annex I of MARPOL 73/78; the Convention on the High Seas (Geneva, 1962); the International Convention on Civil Liability for

Oil Pollution Damage (Brussels, 1969); the United Nations Convention on the Law of the Sea (1982); and Article 22 of the Regulations of the People's Republic of China on the Exploitation of Offshore Petroleum Resources in Cooperation (which provides that "in the course of petroleum operations, the operator and subcontractor shall comply with the relevant laws and provisions on environmental protection and safety of the People's Republic of China, and shall, in the light of international practice, protect fishery resources and other natural resources and prevent the environment, including the ozone, seas, rivers, lakes and land, from being polluted or damaged, when conducting operations.").

70.     Defendant violated the standards imposed under Chinese laws and international laws.  These violations proximately caused the spills that injured the plaintiffs.  As a result, the defendant is liable under a negligence per se theory.  *Mieth v. Ranchquest, Inc.*, 177 S.W.3d 296 (Tex. App.-Houston [1st Dist.] 2005, no pet.).

71.     The defendant's actions and inactions, in the construction, operation, and maintenance of the operations, constitute gross negligence under Texas Civil Practice and Remedies Code article 41.003, thus subjecting the defendant to liability for punitive damages.

72.     Defendant's actions and inactions constitute gross negligence.  These actions and inactions including, but are not limited to, the reckless and wanton disposal of oil and waste into the Bohai Sea via its Penglai 19-3 facilities; the failure to clean up the pollution and stop its further migration; and allowing the migration of this pollution.  At all times pertinent hereto, the defendant had actual physical possession or control of the facilities, and the oil and waste described above.

**SECOND CAUSE OF ACTION**

**Claims Arising from Public and Private Nuisance**

73.　　Plaintiffs incorporate by reference all other paragraphs of this Complaint.

74.　　Defendant knew or should have known that the negligent operation and failure to properly construct, operate, and maintain the oil extraction operations would result in damage to the plaintiffs.

75.　　Defendant has created a public nuisance through the discharge of pollutants that have contaminated the Bohai Sea in and around the plaintiffs' property.  The citizens in and around Shandong province have a right to natural resources that are not contaminated, and to fish in an uncontaminated sea.  Defendant has unreasonably interfered with the use and enjoyment by the citizens of their waters, property, and natural resources.  Plaintiffs have and will continue to experience economic loss, and have suffered harm of a kind different from that suffered by other citizens exercising this right common to the general public with which the defendant has interfered.

76.　　Defendant's contamination substantially interferes with the use and enjoyment of the plaintiffs' property by causing an unreasonable discomfort and annoyance to persons of ordinary sensibilities attempting to use and enjoy it.

77.　　Defendant's contamination has caused (a) physical harm to property, by the encroachment of a damaging substance and by the property's destruction; and (b) emotional harm to a person from the deprivation of the enjoyment of his property through fear, apprehension, and loss of peace of mind.

78.     Defendant has engaged in three kinds of activity giving rise to this nuisance: (1) intentional invasion of another's interests; (2) negligent invasion of another's interests; and (3) other culpable conduct that is abnormal and out of place in its surroundings.

79.     For these reasons, the defendant is liable under nuisance theory. *Holubec v. Brandenberger*, 111 S.W.3d 32, 36 (Tex. 2003); *Walton v. Phillips Petroleum Co.*, 65 S.W.3d 262, 270 (Tex. App.-El Paso 2001, no pet.); *Z.A.O., Inc. f/k/a Bell Thunderbird Oil Co., Inc. v. Yarbrough Drive Center Joint Venture*, 50 S.W.3d 531, 532 (Tex. App.-El Paso 2001, no pet.); *Hicks v. Humble Oil & Refining Co.*, 970 S.W.2d 90, 96 (Tex. App.-Houston [14[th] Dist.] 1998, pet. denied).

80.     Defendant has also created a private nuisance by using its property in a way that has caused reasonable fear in those who own, lease, or occupy property nearby. *Kane v. Cameron International, Inc.*, 2011 WL 9602 (Tex. App.-Houston [14[th] Dist.] 2011, no pet.); *McMahan v. City of Abilene*, 261 S.W. 455, 455-56 (Tex. Civ. App.-El Paso 1924, writ dism'd w.o.j.).

81.     Because the defendant has created a public and private nuisance, it is subject to recovery for damages, including punitive damages, and also subject to injunctive relief.

82.     For the following reasons, the nuisance causing the plaintiffs' injury is permanent, not temporary. *Schneider Nat. Carriers, Inc. v. Bates*, 147 S.W.3d 264 (Tex. 2004).

83.     The environmental catastrophe cannot be characterized as a single spill event. Instead, there have been many related spills from several platforms at the field, over many months, some of which spills remain ongoing.  Since this suit was originally brought to Chinese court, the Chinese government has admitted still more spills at the site and asserted that it is attempting to control the problems.

84.     The spills and leaks at the Penglai 19-3 oil field have occurred many times in the year(s) leading up to the filing of this suit, and are likely to continue.  Much of the exact dates, frequency, and extent of future damage of these spills can be reasonably ascertained.  Because the impact will continue into the future, the property value of the plaintiffs' fishing operations will begin to reflect that impact, and there is a sufficient basis in the plaintiffs' experience for a jury to evaluate the nuisance prospectively and reasonably predict the future consequences.

85.     The contamination nuisance is not so irregular or intermittent over the period leading up to filing and trial that future injury cannot be estimated with reasonable certainty. Instead, the contamination nuisance is sufficiently constant or regular that future impact can be reasonably evaluated.

### THIRD CAUSE OF ACTION

### Claims Arising from Trespass

86.     Plaintiffs incorporate by reference all other paragraphs of this Complaint.

87.     Defendant's storage, release, and disposal of oil and waste caused an intentional physical interference with the exclusive possession of the plaintiffs' property, and an actual physical invasion of the plaintiffs' right of possession.  Defendant did not have legal right to encroach on the plaintiffs' property, and the defendant caused and allowed the contamination to cross onto the plaintiffs' property.

88.     For these reasons, the defendant is liable for its trespass.  *Pentagon Enterprises v. Southwestern Bell Tel. Co*., 540 S.W.2d 477 (Tex. Civ. App.-Houston [14th Dist.] 1976, writ ref'd n.r.e.); *Schronk v. Gilliam*, 380 S.W.2d 743 (Tex. Civ. App.-Waco 1964, no writ); *Gregg v. Delhi-Taylor*, 162 Tex. 26, 344 S.W.2d 411 (1961).  Defendant is subject to recovery for actual and punitive damages, as well as injunctive relief.

## FOURTH CAUSE OF ACTION

### Claims Arising from Unjust Enrichment

89.     Plaintiffs incorporate by reference all other paragraphs of this Complaint.

90.     Defendant has been unjustly enriched at the plaintiffs' expense, in that the defendant has derived substantial economic benefits from the expenses saved by not implementing prudent environmental and public health safeguards.   This corner-cutting has allowed the defendant to avoid the substantial costs and expenses associated with the prudent oilfield operations.

91.     Texas law provides that where a defendant has unfairly received economic benefit, principles of justice may require that a plaintiff be the rightful receiver of the money where the defendant externalized cost onto the innocent plaintiff.  *Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 164 (Tex. App.-El Paso 1997, no writ).

## FIFTH CAUSE OF ACTION

### Claims Arising from the Alien Torts Claims Act, 28 U.S.C. § 1350

92.     Plaintiffs incorporate by reference all other paragraphs of this Complaint.

93.     Defendant's acts and omissions of tortiously discharging oil and waste into the environment; damaging the lush fish stocks and shores of the Bohai Sea; and severely damaging the livelihood of the fishermen violate the law of nations, international law, and worldwide industry standards and practices, as well as the laws of the United States.

94.     China and the United States are both signees of the 1973 International Convention for the Prevention of Pollution from Ships, as amended in 1978, and which is referred to as "MARPOL 73/78."  Regulation 21(c) of Chapter II of Annex I of MARPOL 73/78 provides that "the discharge into the sea of oil or oily mixture shall be prohibited except when the oil content

of the discharge without dilution does not exceed 15 parts per million." The Penglai 19-3 oilfield discharges also violate the laws and standards set forth in the Convention on the High Seas (Geneva, 1962); the International Convention on Civil Liability for Oil Pollution Damage (Brussels, 1969); and the United Nations Convention on the Law of the Sea (1982).

95.     Under the Alien Tort Claims Act, 28 U.S.C. § 1350, the federal courts are open for adjudication of rights already recognized by international law, such as those mentioned above. The tortious violation of these international laws by the defendant, which caused injury to the plaintiffs, subjects the defendant to redress by adjudication in this Court.

## SIXTH CAUSE OF ACTION

## Claims Based in Equitable Relief

96.     Plaintiffs incorporate by reference all other paragraphs of this Complaint.

97.     As a result of the defendant's conduct, the plaintiffs' properties and environment are highly contaminated with oil and waste.

98.     In the absence of injunctive relief, the plaintiffs will suffer immediate, irreparable harm because the spills are ongoing, and continue to threaten and worsen the environmental damage that affects the fishermen.

99.     Plaintiffs are entitled to equitable relief to remedy the contamination and spoliation of their properties and environment.

## DEMAND FOR JURY TRIAL

100.    Plaintiffs demand trial by jury on all issues.

## PRAYER FOR RELIEF

Wherefore, the plaintiffs pray for judgment against the defendant as follows:

1.      Declaring that the defendant is liable, jointly and solidarily, for all damages sustained by the plaintiffs, and to be sustained by plaintiffs in the future, including reasonable attorneys' fees, as a result of the foregoing.

2.      Awarding the plaintiffs compensatory damages in an amount to be proven at trial, including payment of all property and economic damages sustained by plaintiffs and the costs to restore the fish stocks and environment to its original unpolluted state; damage to natural resources; loss of use and enjoyment of the property; loss of quality of life; compensation for unjust enrichment; and other reasonable damages incidental to these claims.

3.      Awarding the plaintiffs punitive and exemplary damages pursuant to Texas Civil Practice and Remedies Code article 41.003, and the other causes of action mentioned above.

4.      Ordering the defendant to pay the plaintiffs sufficient funds so that the plaintiffs may conduct a comprehensive environmental assessment of the Bohai Sea to identify the extent of the pollution.

5.      Awarding the plaintiffs all costs of this suit, attorney fees, expert witness fees, and for legal interest herein for any amount awarded from the date of judicial demand until paid.

6.      Awarding the plaintiffs stigma damages for diminution in property value.

7.      Ordering a mandatory and prohibitory injunction that defendant stop the spills, halt the trespass and nuisance, and restore the contaminated areas of the Bohai Sea to the pre-contaminated condition.

8.      For all just and equitable relief.

Dated:  July 2, 2012.

Respectfully submitted,


_____/s/ Thomas E. Bilek_____

Thomas E. Bilek
State Bar No. 02313525 / SDTX Bar No. 9338
Kelly Cox Bilek
THE BILEK LAW FIRM, L.L.P.
808 Travis, Suite 802
Houston, TX  77002
(713) 227-7720
FAX (713) 227-9404

Stuart H. Smith
Michael G. Stag
John L. Fontenot
Sean Cassidy
SMITH STAG, L.L.C.
365 Canal Street, Suite 2850
New Orleans, LA  70130
(504) 593-9600
(504) 593-9601 (fax)

**Attorneys for Plaintiffs**