UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PEIQING CONG, *et al.* | § | |
| | § | |
| Plaintiffs, | § | |
| | § | CIVIL ACTION NO. 4:12-CV-01976 |
| v. | § | |
| | § | |
| CONOCOPHILLIPS COMPANY, | § | JURY TRIAL DEMANDED |
| Defendant. | § | |
| | § | |

**CONOCOPHILLIPS COMPANY'S**
**BRIEF IN SUPPORT OF ITS MOTION TO DISMISS**

**Martin D. Beirne**
Texas Bar No. 02055000
Southern District of Texas No. 3120
1300 Post Oak Boulevard, Suite 2500
Houston, Texas 77056
Tel. (713) 623-0887
Fax (713) 960-1527

**ATTORNEY IN CHARGE FOR DEFENDANT**
**CONOCOPHILLIPS COMPANY**

[Additional counsel on next page]

**Of Counsel:**

BEIRNE, MAYNARD & PARSONS, L.L.P.
**David A. Pluchinsky**
Texas Bar No. 16074400
Southern District of Texas No. 9159
**Darin L. Brooks**
Texas Bar No. 00796252
Southern District of Texas No. 22788
**Kristen W. Kelly**
Texas Bar No. 24046198
Southern District of Texas No. 690180
1300 Post Oak Boulevard, Suite 2500
Houston, Texas 77056
Tel. (713) 623-0887
Fax (713) 960-1527

**Of Counsel:**

KIRKLAND & ELLIS LLP
**Brant W. Bishop, P.C.**
Southern District of Texas No. 724895
**Patrick Bryan**
Southern District of Texas No. 1572792
**Emily P. Hughes**
Southern District of Texas No. 1572784
655 Fifteenth St., N.W.
Washington, D.C. 20005
Tel. (202) 879-5000
Fax (202) 879-5200

**Of Counsel:**

BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
**Sean C. Grimsley**
Southern District of Texas No. 1561634
**Glen E. Summers**
Southern District of Texas No. 598585
**Daniel R. Brody**
Southern District of Texas No. 37820
1899 Wynkoop Street, Suite 800
Denver, Colorado  80202
Tel. (303) 592-3100
Fax (303) 592-3140

## Table of Contents

                                                                                      **Page**

TABLE OF CONTENTS ........................................................................................... iii

TABLE OF AUTHORITIES .........................................................................................v

SUMMARY OF THE LAWSUIT ................................................................................1

BACKGROUND ..........................................................................................................2

A.    Procedural background ....................................................................................2

B.    Factual background .........................................................................................2

      1.    The releases, the government's investigation, and COPC's settlements ..............2

      2.    Adequacy and availability of the Chinese legal system ........................................5

ARGUMENT ...............................................................................................................7

A.    This Court should dismiss on *forum non conveniens* grounds .........................7

      1.    China is an adequate and available forum. ..........................................................8

            a.    China is an adequate forum .........................................................8

            b.    China is an available forum. ......................................................12

      2.    The private and public interest factors favor dismissal. .....................................13

            a.    The private interest factors strongly support dismissal ...........................13

            b.    The public interest factors also strongly support dismissal. .................15

B.    The act of state doctrine bars this case ...........................................................19

C.    This Court should dismiss based on international comity. ...............................22

D.    The Court should dismiss for failure to join indispensable party
      ConocoPhillips China (COPC). .....................................................................24

      1.    COPC is a necessary party whose joinder is not feasible. ...............................24

      2.    This suit should not proceed without COPC. .....................................................27

E.    The Complaint fails to state cognizable claims. ..............................................29

1.      Plaintiffs state no cognizable federal claim, nor basis for jurisdiction, under the Alien Tort Statute (Fifth Cause of Action). .........................................29

     a.      There is no treaty of the United States that provides a basis for ATS jurisdiction over plaintiffs' claims. ....................................30

     b.      There is no "law of nations" support for plaintiffs' claims. ..................32

     c.      ATS jurisdiction does not extend to corporate defendants and should not extend to torts within the territory of a foreign state. ...........33

2.      Plaintiffs fail to state claims under Texas state law. ..........................................34

     a.      Federal maritime law and the foreign affairs doctrine bar application of Texas state law (First through Fourth Causes of Action). .................34

          i.      General maritime law—including choice of law rules recognizing China's overriding interests—displaces Texas law. ..............................................................34

          ii.     The foreign affairs doctrine bars plaintiffs' state law claims. ..................................................................37

     b.      Plaintiffs fail adequately to plead ConocoPhillips's negligence (First Cause of Action)..............................................................39

     c.      Plaintiffs fail to plead the property interest required to show nuisance, which also is not a recognized admiralty cause of action (Second Cause of Action). ..................................................................43

     d.      Plaintiffs allege no ownership or right to possess land, nor its intentional invasion by ConocoPhillips, to establish trespass (Third Cause of Action). ..................................................................45

     e.      Plaintiffs do not allege they conferred on ConocoPhillips a benefit constituting unjust enrichment (Fourth Cause of Action)......................47

     f.      Plaintiffs' claim for equitable relief (Sixth Cause of Action) states no independent claim for relief. ............................................................48

REQUEST FOR ORAL ARGUMENT ...................................................................49

CONCLUSION..........................................................................................................49

CERTIFICATE OF SERVICE ..................................................................................51

[iv]

## Table of Authorities

**Page**

## CASE AUTHORITIES

*Abecassis v. Wyatt*,
   704 F. Supp. 2d 623 (S.D. Tex. 2010) ..................................................... 32

*Ainsworth v. Shell Offshore, Inc.*,
   829 F.2d 548 (5th Cir. 1987) ................................................................. 46

*Alberto v. Diversified Grp., Inc.*,
   55 F.3d 201 (5th Cir. 1995) ................................................................... 41

*Ali Shafi v. Palestinian Auth.*,
   642 F.3d 1088 (D.C. Cir. 2011) .............................................................. 30

*Am. Dredging Co. v. Miller*,
   510 U.S. 443 (1994) ............................................................................... 16

*Am. Fuel Corp. v. Utah Energy Dev. Co.*,
   122 F.3d 130 (2d Cir. 1997) ................................................................... 41

*Am. Ins. Ass'n v. Garamendi*,
   539 U.S. 396 (2003) ......................................................................... 37, 38

*Amoco Prod. Co. v. Smith*,
   946 S.W.2d 162 (Tex. App.—El Paso 1997) ........................................... 47

*Apache Bohai Corp., LDC v. Texaco China, B.V.*,
   330 F.3d 307 (5th Cir. 2003) ................................................................. 31

*Archawski v. Hanioti*,
   350 U.S. 532 (1956) ............................................................................... 47

*ASARCO LLC v. Americas Mining Corp.*,
   382 B.R. 49 (Bankr. S.D. Tex. 2007) ...................................................... 41

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................... 25, 39, 46

*Asociacian de Reclamantes v. United Mexican States*,
   561 F. Supp. 1190(D.D.C. 1983), ........................................................... 21

[v]

*Bailey v. Dolphin Int'l, Inc.*,
   697 F.2d 1268 (5th Cir. 1983) ................................................ 37

*Banco Nacional de Cuba v. Sabbatino*,
   376 U.S. 398 (1964) ................................................ 19, 20

*Barbetta v. S/S Berm. Star*,
   848 F.2d 1364 (5th Cir. 1988) ................................................ 43

*Baris v. Sulpicio Lines, Inc.*,
   932 F.2d 1540 (5th Cir. 1991) ................................................ 13

*Beanal v. Freeport-McMoran, Inc.*,
   197 F.3d 161 (5th Cir. 1999) ................................................ 32

*Bi v. Union Carbide Chemicals & Plastics Co. Inc.*,
   984 F.2d 582 (2d Cir. 1993) ................................................ 22

*Blanco v. Banco Indus. de Venez., S.A.*,
   997 F.2d 974 (2d Cir. 1993) ................................................ 15

*Blue Gulf Seafood, Inc. v. TransTexas Gas Corp.*,
   24 F. Supp. 2d 732 (S.D. Tex. 1998) ................................................ 47

*Bridas S.A.P.I.C. v. Gov't of Turkm.*,
   345 F.3d 347 (5th Cir. 2003) ................................................ 41

*Bridas S.A.P.I.C. v. Gov't of Turkm.*,
   447 F.3d 411 (5th Cir. 2006) ................................................ 41

*Callejo v. Bancomer, S.A.*,
   764 F.2d 1101 (5th Cir. 1985) ................................................ 21

*Carey v. Bahama Cruise Lines*,
   864 F.2d 201 (1st Cir. 1988) ................................................ 36

*City of Dallas v. Hughes*,
   344 S.W.3d 549 (Tex. App.—Dallas 2011) ................................................ 40

*Clipper Wonsild Tankers Holding A/S v. Biodiesel Ventures, LLC*,
   851 F. Supp. 2d 504 (S.D.N.Y. 2012) ................................................ 41

*Coastal Habitat Alliance v. Pub. Util. Comm'n of Tex.*,
   294 S.W.3d 276 (Tex. App.—Austin 2009) ................................................ 44

[vi]

*Coats v. Penrod Drilling Corp.*,
5 F.3d 877 (5th Cir. 1993) ................................................................... 35

*Coats v. Penrod Drilling Corp.*,
61 F.3d 1113 (5th Cir. 1995) ............................................................... 34, 36

*Compania Naviera Joanna SA v. Koninklijke Boskalis Westminster NV*,
569 F.3d 189 (4th Cir. 2009) .............................................................. 8, 31

*Cont'l Cas. Co. v. Canadian Universal Ins. Co.*,
605 F.2d 1340 (5th Cir. 1979) ............................................................. 34

*Dahl v. United Techs. Corp.*,
632 F.2d 1027 (3d Cir. 1980) ............................................................... 15

*Davis Cos. v. Emerald Casino, Inc.*,
268 F.3d 477 (7th Cir. 2001) ............................................................... 25

*De La Cruz v. Gulf Coast Marine & Assoc., Inc.*,
Civil Action No. 9-09-cv-167, 2011 WL 846100 (E.D. Tex. March 7, 2011) ................... 31, 32

*Delta Seaboard Well Servs., Inc. v. Am. Int'l Specialty Lines Ins. Co.*,
602 F.3d 340 (5th Cir. 2010) ............................................................... 18

*Dickson Marine Inc. v. Panalpina, Inc.*,
179 F.3d 331 (5th Cir. 1999) ............................................................... 26

*Dole Food Co. v. Patrickson*,
538 U.S. 468 (2003) ....................................................................... 41

*Dowling v. Hyland Therapeutics Div., Travenol Labs., Inc.*,
767 F. Supp. 57 (S.D.N.Y. 1991) ......................................................... 16, 17

*Dragon Capital Partners L.P. v. Merrill Lynch Capital Servs. Inc.*,
949 F. Supp. 1123 (S.D.N.Y. 1997) ......................................................... 17

*DTEX, LLC v. BBVA Bancomer, S.A.*,
508 F.3d 785 (5th Cir. 2007) ............................................................... 9

*Dunn v. A/S Em. Z. Svitzer*,
885 F. Supp. 980 (S.D. Tex. 1995) ......................................................... 19

*EEOC v. Arabian Am. Oil Co.*,
499 U.S. 244 (1991) ....................................................................... 34

[vii]

*Emeraldian Ltd. P'ship v. Wellmix Shipping Ltd.*,
　　No. 08 Civ. 2991 (RJH), 2009 WL 3076094 (S.D.N.Y. Sept. 28, 2009) ................................. 42

*Figueroa v. Williams*,
　　Civil Action Nos. V-05-56 through V-05-62, 2010 WL 5387599 (S.D. Tex. 2010) .............. 38

*Flores v. S. Peru Copper Corp.*,
　　414 F.3d 233 (2d Cir. 2003) ........................................................................................ 32, 33

*Fogelman v. ARAMCO (Arabian American Oil Co.)*,
　　920 F.2d 278 (5th Cir. 1991) ...................................................................................... 36, 37

*Foley Bros. v. Filardo*,
　　336 U.S. 281 (1949).......................................................................................................... 34

*Forsythe v. Saudi Arabian Airlines Corp.*,
　　885 F.2d 285 (5th Cir. 1989) .............................................................................................. 18

*Freeman v. Northwest Acceptance Corp.*,
　　754 F.2d 553 (5th Cir. 1985) ........................................................................................ 24, 27

*Freudensprung v. Offshore Technical Servs., Inc.*,
　　379 F.3d 327 (5th Cir. 2004) ........................................................................................ 26, 27

*Geier v. Omniglow Corp.*,
　　357 Fed. App'x 377 (2d Cir. 2009) .................................................................................... 13

*Gibbs ex rel. Gibbs v. Carnival Cruise Lines*,
　　314 F.3d 125 (3d Cir. 2002) ........................................................................................ 34, 35

*Golden v. Omni Energy Servs. Corp.*,
　　242 F. App'x 965 (5th Cir. 2007)........................................................................................ 25

*Golnoy Barge Co. v. M/T Shinoussa*,
　　841 F. Supp. 783 (S.D. Tex. 1993).................................................................................... 47

*Gonzales v. P.T. Pelangi Niagra Mitra Int'l*,
　　196 F. Supp. 2d 482 (S.D. Tex. 2002) ........................................................................... 8, 10

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
　　131 S. Ct. 2846 (2011)........................................................................................................ 26

*Gulf Oil Corp. v. Gilbert*,
　　330 U.S. 501 (1947)............................................................................................................ 16

*Haas v. Jefferson Nat'l Bank*,
442 F.2d 394 (5th Cir. 1971) ........................................................................ 24

*Hargrave v. Fibreboard Corp.*,
710 F.2d 1154 (5th Cir. 1983) ................................................................. 26, 27

*Heldenfels Bros., Inc. v. City of Corpus Christi*,
832 S.W.2d 39 (Tex. 1992) ......................................................................... 48

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
466 U.S. 408 (1984) ................................................................................... 26

*Hellenic Lines Ltd. v. Rhoditis*,
398 U.S. 306 (1970) ................................................................................... 36

*Henry Schein, Inc. v. Stromboe*,
102 S.W.3d 675 (Tex. 2002) ....................................................................... 35

*Hilton v. Guyot*,
159 U.S. 113 (1895) ................................................................................... 23

*Huang v. Advanced Battery Techs., Inc.*,
No. 09 CV 8297(HB), 2010 WL 2143669 (S.D.N.Y. May 26, 2010) ....................... 8

*Hull 753 Corp. v. Elbe Flugzeugwerke GmbH*,
58 F. Supp. 2d 925 (N.D. Ill. 1999) ............................................................. 18

*In re Agent Orange Prod. Liab. Litig.*,
373 F. Supp. 2d 7(E.D.N.Y. 2005), ............................................................... 33

*In re Air Crash Disaster*,
821 F.2d 1147 (5th Cir. 1987) .......................................... 7, 8, 10, 12, 37

*In re Air Crash Disaster near New Orleans, La.*,
883 F.2d 17 (5th Cir. 1989) ......................................................................... 7

*In re BP Shareholder Derivative Litig.*,
MDL No. 10-md-2185, Civil Action No. 4:10-cv-3447, 2011 WL 4345209
(S.D. Tex. Sep. 15, 2011) ........................................................................... 18

*In re CLK Energy Partners, LLC, Bankruptcy*,
No. 09-50616, 2010 WL 1930065 (Bankr. W.D. La. May 12, 2010) ....................... 41

*In re Deepwater Horizon*,
   808 F. Supp. 2d 943 (E.D. La. 2011) ............................................................................ 35

*In re Deepwater Horizon*,
   MDL No. 10-4182,  10-4183, 10-3059, 11-516, 2011 WL 5520295
   (E.D. La. Nov. 14, 2011) ........................................................................... 44, 45, 46

*In re Great Lakes Dredge & Dock Co.*,
   624 F.3d 201 (5th Cir. 2010) .............................................................................. 39, 40

*In re Nazi Era Cases Against German Defs. Litig.*,
   129 F. Supp. 2d 370 (D.N.J. 2001) ............................................................................ 23

*In re Oil Spill by Oil Rig DEEPWATER HORIZON in the Gulf of Mexico, on April 20, 2010*,
   835 F. Supp. 2d 175 (E.D. La. 2011) ......................................................................... 31

*In re Otal Invs. Ltd.*,
   No. 03 Civ. 4304, 03 CIV. 9962, 2005 WL 1588986 (S.D.N.Y. Jul.8, 2005) ...................... 31

*In re Ski Train Fire in Kaprun Austria on Nov. 11, 2000*,
   499 F. Supp. 2d 437 (S.D.N.Y. 2007) ........................................................................ 14

*In re Toyota Motor Corp.*,
   785 F. Supp. 2d 883 (C.D. Cal. 2011) ............................................................. 24, 27, 28

*Indian Harbor Ins. Co. v. KB Lone Star, Inc.*,
   2012 WL 1038658 (S.D. Tex. 2012) ........................................................................... 25

*Ingram v. Turner*,
   125 S.W. 327 (Tex. Civ. App. 1910) ........................................................................... 44

*Int'l Shoe Co. v. Wash. Office of Unemployment Comp. & Placement*,
   326 U.S. 310 (1945) ................................................................................................. 25

*ITL Int'l, Inc. v. Walton & Post, Inc.*,
   741 F. Supp. 2d 1313 (S.D. Fla. 2010) ....................................................................... 23

*J.P. Morgan Chase Bank, N.A. v. Tex. Contract Carpet, Inc.*,
   302 S.W.3d 515 (Tex. App.—Austin 2009) ................................................................. 40

*Jamail v. Stoneledge Condo. Owners Ass'n*,
   970 S.W.2d 673 (Tex. App.—Austin 1998) ................................................................. 43

*Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*,
513 U.S. 527 (1995) ............................................................................... 34, 35

*Johnston v. Oiltanking Houston, L.P.*,
367 S.W.3d 412 (Tex. App.—Houston [14th Dist.] 2012) ...................................... 43

*Kane v. Cameron Int'l Corp.*,
331 S.W.3d 145 (Tex. App.—Houston [14th Dist.] 2011) ...................................... 44

*Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
335 F.3d 357 (5th Cir. 2003) ............................................................... 22, 23

*Kiobel v. Royal Dutch Petrol. Co.*,
132 S. Ct. 1738 (Mar. 5, 2012) .................................................................. 34

*Kiobel v. Royal Dutch Petrol. Co.*,
132 S. Ct. 472 (Oct. 17, 2011) .................................................................. 34

*Kiobel v. Royal Dutch Petrol. Co,*
621 F.3d 111 (2nd Cir. 2010) ............................................................... 31, 34

*Koninklijke Boskalis Westminster NV v. Mediterranean Shipping Co., S.A., Civil Action*,
No. 07-2796, 2009 WL 270237 (E.D. La. 2009) ................................................... 31

*La. Crisis Assistance Ctr. v. Marzano-Lesnevich*,
Civil Action No. 11-2102, 2012 WL 2717075  (E.D. La. July 9, 2012) ....................... 48

*Landry v. Robison*,
219 S.W. 819 (Tex. 1920) ...................................................................... 44

*Lauritzen v. Larsen*,
345 U.S. 571 (1953) ........................................................................... 36

*Leetsch v. Freedman*,
260 F.3d 1100 (9th Cir. 2001) ................................................................. 13

*Lopez-Juarez v. Kelly*,
348 S.W.3d 10 (Tex. App.—Texarkana 2011) ..................................................... 40

*Marastro Compania Naviera, S.A. v. Canadian Mar. Carriers, Ltd.*,
959 F.2d 49 (5th Cir. 1992) ................................................................... 45

*McQueen v. Burkhart*,
290 S.W.2d 577 (Tex. App.—Austin 1956) ....................................................... 44

[xi]

*Medellin v. Texas*,
  552 U.S. 491 (2008) ........................................................................................... 30

*Miles v. Apex Marine Corp.*,
  498 U.S. 19 (1990) ............................................................................................. 36

*Mills v. Port Arthur, Tex.*,
  Civil Action No. 1:05-CV-298, 2006 WL 3531460 (E.D. Tex. Dec. 4, 2006) ...................... 41

*Mitsuba Tex., Inc. v. Brownsville Indep. Sch. Dist.*,
  No. 05-97-01271-CV, 2000 WL 122348 (Tex. App.—Dallas Feb. 2, 2000) .......................... 48

*Morrison v. Nat'l Austl. Bank*,
  130 S. Ct. 2869 (2010) ....................................................................................... 33

*Motley v. Homecomings Fin., LLC*,
  557 F. Supp. 2d 1005 (D. Minn. 2008) .................................................................... 48

*Mujica v. Occidental Petrol. Corp.,*,
  381 F. Supp. 2d 1164 (C.D. Cal. 2005) ............................................................... 38, 39

*N. Marine Underwriters, Ltd. v. FBI Express, Inc.*,
  697 F. Supp. 2d 695 (S.D. Tex. 2009) ..................................................................... 39

*Nat'l Union Fire Ins. Co. v. Am. Eurocopter Corp.*,
  No. 11-10798, 2012 WL 3642264 (5th Cir. Aug. 27, 2012) ............................................ 18

*Nissan Motor Corp. in U.S.A. v. Md. Shipbuilding & Drydock Co.*,
  544 F. Supp. 1104 (D. Md. 1982) ........................................................................... 45

*Oxford Capital Corp. v. United States*,
  211 F.3d 280 (5th Cir. 2000) ............................................................................... 42

*Pan Am. World Airways, Inc. v. Lopez*,
  490 U.S. 1032 (1989) ........................................................................................... 7

*Phillippines v. Pimentel*,
  553 U.S. 851 (2008) ........................................................................................... 28

*Piper Aircraft Co. v. Reyno*,
  454 U.S. 235 (1981) .................................................................................... 7, 8, 17

*Polanco v. H.B. Fuller Co.*,
  941 F. Supp. 1512 (D. Minn. 1996) ........................................................................ 27

*Powell v. Keeley*,
    795 F. Supp. 2d 587 (S.D. Tex. 2011) ................................................................... 40

*Preston v. Frantz*,
    11 F.3d 357 (2d Cir. 1993) ................................................................................ 35

*Provident Tradesmen's Bank & Trust Co. v. Patterson*,
    390 U.S. 102 ...................................................................................................... 27

*Pulitzer-Polster v. Pulitzer*,
    784 F.2d 1305 (5th Cir. 1986) ................................................................ 24, 27, 28

*Robinson v. TCI/US West Communications Inc.*,
    117 F.3d 900 (5th Cir. 1997) ........................................................................ 12, 13

*Rodriguez v. City of Laredo*,
    No. 5:06-cv-175, 2007 WL 2329860 (S.D. Tex. Aug. 13, 2007) ............................ 48

*Rolls-Royce Corp. v. Heros, Inc.*,
    576 F. Supp. 2d 765 (N.D. Tex. 2008) ............................................................... 43

*Romero v. Int'l Terminal Operating Co.*,
    358 U.S. 354 (1959) ...................................................................................... 36, 37

*Saqui v. Pride Cent. Am. LLC*,
    595 F.3d 206 (5th Cir. 2010) ........................................................................ 13, 16

*Sarei v. Rio Tinto PLC*,
    487 F.3d 1193 (9th Cir 2007) ............................................................................ 33

*Sarei v. Rio Tinto PLC*,
    221 F. Supp. 2d 1116 (C.D.Cal. 2002) ............................................................... 33

*Sekco Energy, Inc. v. M/V Margaret Chouest*,
    820 F. Supp. 1008 (E.D. La. 1993) ................................................................... 45

*Sinochem Int'l Co., Ltd. v. Malaysia Int'l Shipping Corp.*,
    549 U.S. 422 (2007) ............................................................................................. 8

*Slaven v. BP Am., Inc.*,
    786 F. Supp. 853 (C.D. Cal. 1992) ................................................................... 35

*Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for the S. Dist. of Iowa*,
    482 U.S. 522 (1983) .......................................................................................... 22

*Sosa v. Alvarez-Machain,*
    542 U.S. 692 (2004) ................................................................................... 30, 32

*Spectrum Stores, Inc. v. Citgo Petrol. Corp.,*
    632 F.3d 938 (5th Cir. 2011) ................................................................. 19, 20, 21

*Tang v. Synutra Int'l, Inc.,*
    656 F.3d 242 (4th Cir. 2011) ..................................................................... 8, 10, 11

*Tejas Inc. v. Siemers,*
    No. A-09-CV-0281 LY, 2009 WL 2762066 (W.D. Tex. Aug. 26, 2009) ............................... 41

*Tex. Woman's Univ. v. The Methodist Hosp.,*
    221 S.W.3d 267 (Tex. App.—Houston [1st Dist.] 2006) ....................................... 46

*The Daniel Ball,*
    77 U.S. (10 Wall.) 557 (1870) ................................................................... 35

*Theriot v. Bay Drilling Corp.,*
    783 F.2d 527 (5th Cir. 1986) ..................................................................... 35

*Timberlake v. Synthes Spine, Inc.,*
    Civil Action No. V-08-4, 2011 WL 2607044 (S.D. Tex 2011) ................................... 24, 25, 27

*Turner Entm't Co. v. Degeto Film,*
    25 F.3d 1512 (11th Cir. 1994) ................................................................... 23

*Underhill v. Hernandez,*
    168 U.S. 250 (1897) ............................................................................. 20

*United States v. Alaska,*
    503 U.S. 569 (1992) ............................................................................. 31

*United States v. BestFoods,*
    524 U.S. 51 (1998) ............................................................................ 25, 41

*United States v. Jho,*
    534 F.3d 398 (5th Cir. 2008) ................................................................. 31, 32

*United States v. Jon-T Chems., Inc.,*
    768 F.2d 686 (5th Cir. 1985) ................................................................... 42

*United States v. Pena,*
    684 F.3d 1137 (11th Cir. 2012) ................................................................. 31

[xiv]

*United States v. Pink*,
  315 U.S. 203 (1942)............................................................................................ 38

*United States v. Royal Caribbean Cruises, Ltd.*,
  11 F. Supp. 2d 1358 (S.D. Fla. 1998) ............................................................... 31

*United States v. Zabaneh*,
  837 F.2d 1249 (5th Cir. 1988) ........................................................................... 30

*Vasquez v. Bridgestone/Firestone, Inc.*,
  325 F.3d 665 (5th Cir. 2003) ............................................................................... 7

*Vaz Borralho v. Keydril Co.*,
  696 F.2d 379 (5th Cir. 1983) ............................................................................. 37

*Vizcarra v. Roldan*,
  925 S.W.2d 89 (Tex. App.—El Paso 1996).......................................................... 38

*Zschernig v. Miller*,
  389 U.S. 429 (1968)............................................................................................ 38

## STATUTES

28 U.S.C. § 1332(a)(2).............................................................................................. 29
28 U.S.C. § 1350...................................................................................................... 29

## RULES

FED. R. CIV. P. 12(b)(7) .......................................................................................... 24
FED. R. CIV. P. 19(a)(1)(A) ..................................................................................... 24
FED. R. CIV. P. 19(a)(1)(B)(i).................................................................................. 27
FED. R. CIV. P. 19(b) ............................................................................................... 27

## TREATIES

1973 International Convention for the Prevention of Pollution from Ships, as amended
in 1978 .......................................................................................................................31

The Convention on the High Seas .............................................................................31

The International Convention on Civil Liability for Oil Pollution Damage........................31, 32

The United Nations Convention on the Law of the Sea ........................................31, 32

[xv]

## OTHER AUTHORITIES

RESTATEMENT (SECOND) OF TORTS § 165.................................................................................46

5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1359
(3d ed. 2004) ............................................................................................................................25

Administrative Office of the U.S. Courts, *2011 Annual Report of the Director: Judicial
Business of the United States Courts* ......................................................................................16

Daniel Dzurek, *The People's Republic of China Straight Baseline Claim*, 4 IBRU Boundary
and Security Bulletin 77 (Summer 1996) ...............................................................................30

J. Ashley Roach & Robert W. Smith, *United States Responses to Excessive Maritime Claims* 33-
34 (2d ed. 1996) ......................................................................................................................31

Seoung-Yong Hong & Jon Van Dyke, *Maritime Boundary Disputes, Settlement Processes, and
the Law of the Sea* 56 (Koninklijke Brill NV 2009) ..............................................................31

Zou Keyuan, *Law of the Sea in East Asia: Issues and Prospects* 145 (Routledge 2005)...........31

<u>**SUMMARY OF THE LAWSUIT**</u>

Chinese fishermen ("plaintiffs") allege damages to Chinese fisheries caused by two oil releases from an offshore field operated in Chinese waters by ConocoPhillips China ("COPC")— a Liberian company with offices in China.  The field is jointly developed with the state-owned Chinese National Offshore Oil Company ("CNOOC").  The ***only connection*** this case has to the United States is that COPC is a subsidiary of ConocoPhillips Company ("ConocoPhillips").

This case belongs in China, and the proper defendant is COPC.  Plaintiffs know that, and actually sued COPC in Shandong Province, China.  Plaintiffs acknowledge the China lawsuit is still pending.

The Chinese government has not ignored plaintiffs' claims.  It promptly created a special State Council (chief administrative authority) task force to investigate the causes of and damages from the releases.  The State Council, the State Oceanic Administration ("SOA") and the Ministry of Agriculture ("MOA") issued detailed reports finding that any damage occurred north of the releases, not south where plaintiffs are located.  COPC then entered into sizeable settlements with both the State Oceanic Administration and Ministry of Agriculture, the latter for the express purpose of compensating purportedly affected fishermen.  The Ministry of Agriculture is currently administering distribution of those funds.  It also specifically left open the possibility of compensating fishermen from other areas, such as Shandong, if they demonstrate harm attributable to these specific releases.  Thus, not only does this case belong in China, but it has already been and is continuing to be addressed by Chinese authorities.

Plaintiffs' disagreement with the Chinese government's findings does not mean Chinese courts or process are inadequate.  There is no justification or need for allowing plaintiffs' claims to proceed here.

[1]

## BACKGROUND

### A.    Procedural background

On July 2, 2012, plaintiff Cong and 29 other Chinese fishermen sued ConocoPhillips. (D.E. 1.)  The Complaint raises six claims: negligence under Chinese and Texas law; nuisance, trespass and unjust enrichment under Texas law; violations of the Alien Tort Statute ("ATS"); and a claim for equitable relief.  (*Id.*)  The parties stipulated to a September 24, 2012 response to the Complaint.  (D.E. 4.)  The Court initially set a status hearing for October 1, 2012 (D.E. 3.), but subsequently continued the hearing to January 22, 2013 to allow briefing of this motion. (D.E. 8.)

### B.    Factual background

#### 1.    The releases, the government's investigation, and COPC's settlements

In June 2011, there were two releases of crude oil from the sea bed at separate locations in the Penglai 19-3 oil field in China's Bohai Sea.  (Compl. ¶ 18.)[1]   As shown in the inset map, the Bohai Sea is located in the northeastern part of China and, as explained later in this brief, is within the territorial waters of China.  The graphic shows the Bohai



Sea, the location of the Penglai 19-3 field and the direction the oil traveled after released.

---

[1] The Complaint incorrectly asserts that "[o]n June 4, 2011, it was discovered that two platforms at the Penglai 19-3 field were leaking oil."  (Compl. ¶ 18.)  The two leaks were from the sea bed, not platforms.  The first leak was detected on June 4, 2011.  The second was detected on June 17, 2011.  It is also not true that "[i]t would later come to light that there were many spills, including some that are ongoing."  (*Id.*) There were two events, neither of which is ongoing.  The releases totaled a few thousand barrels.  (Compl. ¶ 31 (setting forth numbers reported by COPC).)

Due to wind and water currents in the Bohai Sea, the oil from the two releases moved northwest from the Penglai 19-3 field.  (Decl. A (Grimsley) Ex. 4,[2] Translation of Accident Investigation and Settlement Report by Joint Investigation Team of the Penglai 19-3 Oil Field Oil Spills pp. 5-7 ("June 21, 2012 SOA Report") (identifying pollution "northwest" of the field).)  The Bohai Sea is surrounded by three provinces—Hebei to the north and west, Liaoning to the northeast, and Shandong to the south.  Plaintiffs are from Shandong.  (Compl. ¶ 1.)

The Penglai 19-3 field is being developed jointly by CNOOC and COPC pursuant to an agreement signed on December 7, 1994.  (Compl. ¶ 14.)  COPC is the operator of the field, although CNOOC is the majority owner responsible for 51% of costs and liabilities.  (Decl. A (Grimsley) Ex. 4, June 21, 2012 SOA Report p. 1.)  CNOOC is a state-owned oil company, fully owned by the People's Republic of China.  (Decl. A (Grimsley) Ex. 2, Company Overview on CNOOC English Website.)  COPC is a Liberian company with its headquarters in China.  (Decl. B (Vanhegan) ¶ 5.)[3]  It is a wholly-owned subsidiary of defendant ConocoPhillips, which is a Delaware company headquartered in Houston.  (Decl. A (Grimsley) Ex. 1, 2011 10-K at 1.)

Contrary to plaintiffs' allegations, the Chinese government took the releases very seriously.  In August 2011, China's State Council (chief administrative authority) established a Joint Investigation Team to investigate (1) the causes of the releases, and (2) potential resulting environmental and other damage.  (Decl. A (Grimsley) Ex. 4, June 21, 2012 SOA Report.)  As noted in the State Oceanic Administration's recent report on the investigation:

> The CPC Central Committee and State Council attached great importance to the incidents, with Premier Wen Jiabao, Vice Premier Li Keqiang, Secretary Zhou Yongkang, Vice Premier Hui Liangyu, Vice Premier Zhang Dejiang, State Councilor Ma Kai, etc. giving important instructions on many occasions. Premier

---

[2] "Decl. A (Grimsley)" refers to the Declaration of Sean Grimsley attached to this brief and exhibits thereto.  Mr. Grimsley is one of the lawyers representing ConocoPhillips in this matter.

[3] "Decl. B (Vanhegan)" refers to the Declaration of Graham W. C. Vanhegan attached to this brief and exhibits thereto.  Mr. Vanhegan is Deputy General Counsel, Corporate and Chief Compliance Officer for ConocoPhillips.

Wen Jiabao and Vice Premier Li Keqiang have separately chaired executive and thematic meetings of the State Council to study and handle the oil spills.

(*Id.* at 2-3.)  The State Oceanic Administration led the investigation, assisted by the Ministry of Land and Resources, Ministry of Environmental Protection, Ministry of Transport, the Ministry of Agriculture, the Administration of Work Safety, and the National Energy Administration. (*Id.*)  The State Oceanic Administration assembled a team of "15 authoritative experts in geology, oil reservoir, drilling, environment, ecology and fisheries from various Chinese research institutes and large enterprises . . . to form an advisory group and participate in the investigation work." (*Id.*)

Based on the government's findings and subsequent demands, COPC entered into two substantial settlements with the State Oceanic Administration (with COPC paying 1.09 billion RMB to compensate for damage to the marine environment and 113 million RMB for "social responsibility") and Ministry of Agriculture (with COPC paying 1 billion RMB to compensate for damage to aquatic organisms and 100 million RMB for an ecological fund).[4] (*Id.* at 8-9.) The combined amount of the settlements is 2.303 billion RMB, or roughly $365 million.

One of the express purposes of the settlement with the Ministry of Agriculture was to compensate fishermen "for the cultured organisms and Bohai natural fishery resource losses in part of the counties of Hebei and Liaoning Provinces." (*Id.*)  The settlement does not include fishermen in the Shandong province, which is to the south, as the Joint Investigation Team found pollution damage only in the areas surrounding the field and northwest of the field, which is consistent with the trajectory of the sheens.  (*Id.* at 5-7.)  But the Ministry of Agriculture settlement expressly left open the possibility of providing compensation for fishermen in areas

---

[4] COPC and ConocoPhillips strongly disagree with the Joint Investigation Team's conclusions regarding the scope of the two releases, as well as the damage caused by those releases, but points out the investigation here to show how seriously the Chinese government took the events and the significant amount that COPC has already paid to compensate the government and fishermen for damages purportedly resulting from the spills.

[4]

other than Hebei and Liaoning if those fishermen demonstrate compensable harm.  (Decl. B (Vanhegan) ¶ 13, MOA Settlement Art. 7 ("If any evidence is discovered on damages caused by Penglai 19-3 Oil Spill Accidents to aquaculture areas in Bohai Bay other than the aforesaid areas, administrative mediation and other means may still be adopted to resolve the issue.").)  The Ministry of Agriculture is currently administering the funds. (Decl. A (Grimsley) Ex. 4, June 21, 2012 SOA Report.)

### 2.    Adequacy and availability of the Chinese legal system

In November 2011, plaintiffs sued COPC for damages resulting from the two releases in Chinese court in Shandong Province.  (Compl. ¶ 8.)  Plaintiffs admit that these claims remain pending because that court has neither accepted nor rejected them.  (Compl. ¶ 8; *see also* Decl. C (Li/Fu) ¶ 79.[5])  Under Chinese procedure, a plaintiff initiates suit by filing a Complaint and preliminary evidence demonstrating a "direct interest" in the case, *i.e.* evidence that the defendant's alleged conduct caused plaintiff damages.  (Decl. C (Li/Fu) ¶ 35-36; Decl. D (deLisle) ¶ 54.)  Although the People's Republic of China ("PRC") rules specify that a court should accept or reject a case within a limited period after receiving all necessary documentation to initiate a case, it is not uncommon for PRC courts to exceed the prescribed time limit, particularly if any of the prerequisites provided for in Article 108 of the *PRC Civil Procedure Law* are not met.  (Decl. C (Li/Fu) ¶ 10.)  A court might not act on a complaint within the statutory time for several reasons: for example, a plaintiff's pleading might not meet case acceptance requirements, the case might be complicated, or involve foreign or multiple parties.  (*Id.* ¶¶ 39-40, 77-79.)  Delay does not imply impropriety.  (*Id.* ¶¶ 77-79.)

---

[5] "Decl. C (Li/Fu)" refers to the declaration of Xiaoyang Li and Changyu Fu attached to this brief and exhibits thereto.  Mr. Xiaoyang Li is a senior partner of Jun He Law Offices, a leading prominent law firm in the People's Republic of China.  (Decl. C (Li/Fu) ¶ 1.)  Ms. Changyu Fu is a senior litigation partner of Jun He Law Offices. (*Id.*)  Both are qualified to practice law in China and are experienced litigators.  (*Id.* ¶¶ 2, 4.)  Mr. Li is also licensed in California.  (*Id.* ¶ 2.)  Significantly, Ms. Fu served as a judge in the Ji'nan Intermediate People's Court in Ji'nan City, the capital city of Shandong Province, for ten years before moving to Jun He Law Offices.  (*Id.* ¶ 5.)

China has a well-established court system, including courts of first instance, appellate courts, and specialty courts.  (Decl. C (Li/Fu) ¶¶ 7, 16-22; Decl. D (deLisle) ¶¶ 23-30.[6])  Chinese courts process claims of six to seven million complainants and execute over two million judgments per year, and academic surveys have found high levels of satisfaction among ordinary Chinese citizens with the courts.  (Decl. D (deLisle) ¶ 25.)  China also receives "comparatively high marks in the prominent and widely cited World Bank 'Rule of Law Index'."  (*Id.* ¶ 29.)  In the most recent ratings, "China scores above the 40th percentile globally, not far below the international median," and it "ranks at the median (48.5th percentile) for countries in its 'upper middle income' group even though China's per capita income places it almost at the very bottom of the wide 'upper middle income' range."  (*Id.*)  These rankings "put China on par with or ahead of most of Latin America and much of the former Soviet areas."  (*Id.*)

"China has placed building a legal system, ruling the country through law and establishing a 'rule of law country' high on their political and programmatic agenda."  (*Id.* ¶ 23; *see also id.* ¶ 24 (setting forth various steps the Chinese government has taken to improve the legal system).)  As a result, China's courts have improved significantly over the last decade and judges are of high quality, particularly in the coastal region where plaintiffs filed suit.  (Decl. C (Li/Fu) ¶¶ 67-74; Decl. D (deLisle) ¶¶ 31-36.)  Indeed, "[t]he courts that would hear this case are widely considered to be among the best courts in the country," and it is "widely accepted by participants and observers that courts in more developed regions, including Shandong and especially in the most developed areas, such as Qingdao, where plaintiffs have already brought

---

[6] "Decl. D (deLisle)" refers to the declaration of Professor Jacques deLisle attached to this brief and exhibits thereto. Jacques deLisle is the Stephen A. Cozen Professor of Law, Professor of Political Science, Director of the Center for East Asian Studies and Deputy Director of the Center for the Study of Contemporary China at the University of Pennsylvania. (Decl. D (deLisle) ¶ 1.)  He is a member of the National Committee on United States-China Relations and senior fellow and director of the Asia Program at the Foreign Policy Research Institute.  (*Id.* ¶ 7.)  He has worked on Chinese legal and comparative legal issues for the past 25 years.  (*Id.* ¶¶ 2-11.)

this case, provide fairer and higher quality of justice to litigants." (*Id.* ¶ 31 (citing articles and studies).)  China vests maritime courts with exclusive jurisdiction over the claims that plaintiffs assert.  (Decl. C (Li/Fu) ¶¶ 8, 42.)  It has a complete body of procedural law, tort law, and environmental pollution law.  (Decl. C (Li/Fu) ¶ 11-12, 23-64, 94-102; Decl. D (deLisle) ¶¶ 12-22, 53-62.)  And it has acted to protect the environment by, for example, enacting the PRC *Environmental Protection Law* and the PRC *Ocean Environment Protection Law*, and tasking its Ministry of Environmental Protection with protecting the environment and controlling and preventing pollution.  (Decl. C (Li/Fu) ¶¶ 94, 110; Decl. D (deLisle) ¶¶ 14-16.)  Chinese authorities have specifically identified protection of the environment and compensation for environmental harms as important policy priorities.  (Decl. D (deLisle) ¶ 434.)

## ARGUMENT

### A.    This Court should dismiss on *forum non conveniens* grounds.

This case should be dismissed on *forum non conveniens* grounds because it has little or no connection with this district and everything to do with China.  Such dismissals are appropriate where, as here, the alternative forum is both "available" and "adequate" and relevant private and public interest factors support dismissal.  *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 671 (5th Cir. 2003).  Ultimately, the "inquiry is where trial will best serve the convenience of the parties and the ends of justice."  *In re Air Crash Disaster*, 821 F.2d 1147, 1164-65 (5th Cir. 1987) (en banc) (citations omitted), *vacated on other grounds sub nom.*, *Pan Am. World Airways, Inc. v. Lopez*, 490 U.S. 1032 (1989), *reinstated except as to damages en banc by In re Air Crash Disaster near New Orleans, La.*, 883 F.2d 17 (5th Cir. 1989).  While a plaintiff's forum choice is generally owed deference, when parties like the Shandong fishermen sue in a foreign forum with no nexus to the alleged conduct or the principal evidence related to their claims, that choice deserves skepticism.  *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981)

[7]

("Because the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference.").

1.     **China is an adequate and available forum.**

    a.     **China is an adequate forum.**

"A foreign forum is adequate when the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court." *In re Air Crash Disaster*, 821 F.2d at 1165 (citations omitted). "Put another way, the remedy provided by the foreign forum qualifies as inadequate only when it amounts to 'no remedy at all.'" *Gonzales v. P.T. Pelangi Niagra Mitra Int'l*, 196 F. Supp. 2d 482, 486 (S.D. Tex. 2002) (quoting *Piper*, 454 U.S. at 254).

ConocoPhillips is aware of no case finding that China is an inadequate forum to address claims against private corporations. To the contrary, federal courts routinely find China adequate. *See, e.g., Sinochem Int'l Co., Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429-30, 435-36 (2007) (reinstating—as a "***textbook case for immediate forum non conveniens dismissal***"—district court decision finding Chinese courts adequate to address dispute between Chinese corporation and Malaysian company); *Tang v. Synutra Int'l, Inc.*, 656 F.3d 242, 249-53 (4th Cir. 2011) (affirming finding that China was adequate forum for addressing Chinese children's wrongful death and other claims against a U.S. company regarding its Chinese subsidiary's melamine-contaminated infant formula); *Compania Naviera Joanna SA v. Koninklijke Boskalis Westminster NV*, 569 F.3d 189, 200-203 (4th Cir. 2009) (affirming determination that Tianjin Admiralty Court in China was adequate forum to adjudicate claims regarding tanker collision in Tianjin Port in the Bohai Sea); *Huang v. Advanced Battery Techs., Inc.*, No. 09 CV 8297(HB), 2010 WL 2143669, at **3-4 (S.D.N.Y. May 26, 2010) (holding that China was an adequate forum for addressing employment-related dispute brought by U.S. citizen

[8]

residing in China against a Delaware corporation regarding its facilities in China); *see also* Decl. D (deLisle) ¶ 30 n.23 (citing additional cases).[7]

These decisions are not surprising given China's "well-established judicial system," (Decl. C (Li/Fu) ¶¶ 16-20), and body of procedural and substantive laws (*Id*. ¶¶ 23-64, 94-102; Decl. D (deLisle) ¶¶ 12-22, 53-62). "The substantive law of the foreign forum is presumed to be adequate." *DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 796 (5th Cir. 2007) (internal quotation and citation omitted). That presumption is well-grounded in this case, for China has a "complete body of laws governing tort liability in relation to oceanic environmental pollution." (Decl. C (Li/Fu) ¶ 99; *see also id*. ¶¶ 11-12, 32, 94-102; Decl. D (deLisle) ¶¶ 12-22, 53-62.) Further, the Chinese maritime court that is available to address plaintiffs' claims has special competence in these matters, having been vested with exclusive jurisdiction to hear oceanic pollution claims. (Decl. C (Li/Fu) ¶ 32, 65; Decl. D (deLisle) ¶ 32.) Indeed, the Qingdao Maritime court where plaintiffs have already filed claims was "rated No. 1 in terms of the quality of its work in Shandong Province." (Decl. C (Li/Fu) ¶ 69; *see also* Decl. D (deLisle) ¶¶ 31-36.) Naturally, the judges of that court are experienced in handling maritime disputes and environmental pollution cases and have adjudicated a number of cases that have guiding significance in maritime proceedings. (Decl. C (Li/Fu) ¶¶ 70-74.) Quite simply, as numerous courts have previously recognized, China provides an adequate forum.

Plaintiffs' claim that "this suit is the only chance a group of fishermen has to get justice," (Compl. ¶ 7), cannot withstand scrutiny. In fact, some fishermen allegedly injured by the oil releases have brought suit in the maritime court in Tianjin, China, and that suit has been

---

[7] As Professor deLisle notes, United States courts have also regularly granted *forum non conveniens* motions in favor of countries that at the time ranked at or below China's ranking in the World Bank's "Rule of Law Index." (Decl. D (deLisle) ¶ 30 & n.24.) Those countries include Ecuador, Colombia, Argentina, Russia, Brazil, Mexico, the Dominican Republic, Egypt, Cameroon, Peru, Jamaica and Gabon. (*Id*.)

[9]

accepted.  (Decl. C (Li/Fu) ¶¶ 15, 40; Decl. A (Grimsley) Ex. 5 pp. 10, 13, Translation of Tianjin Fishermen Complaint; Decl. A (Grimsley) Ex. 6, Dec. 14, 2011 *China Daily* Article.)  Plaintiffs insinuate that because an "injured party must *ask* a Chinese government court for permission to bring a suit," the Chinese courts are inadequate.[8]  (Compl. ¶ 8.) But the fact that a court in Shandong has not accepted plaintiffs' particular claims—it has not rejected them, either—does not demonstrate the inadequacy of Chinese courts or law.  Rather, it may reflect, for example, defects in these fishermen's pleadings or insufficient evidence of damage to warrant acceptance of the suit. (Decl. C (Li/Fu) ¶¶ 38, 77-79; Decl. D (deLisle) ¶ 54.); *see also Synutra*, 656 F.3d at 251 (finding Chinese courts adequate even though some Chinese courts failed to act on plaintiffs' claims because such "inaction or delay . . . might be attributable to formal defects in the complaints and not the court's resistance to the subject matter of the cases").  The fact that China requires more than "notice pleading" (Decl. C (Li/Fu) ¶¶ 35-36; Decl. D (deLisle) ¶ 54) does not render its courts unavailable.  *See In re Air Crash Disaster*, 821 F.2d at 1164-65 (forum is adequate notwithstanding that plaintiffs "may not enjoy the same benefits as they might receive in an American court").   Indeed, "only the most perilous obstacles to conducting litigation, evidenced by a complete absence of due process in the alternative forum, will render that forum inadequate."  *Gonzales*, 196 F. Supp. 2d at 486.

Likewise, plaintiffs' insinuation that the Shandong courts or Chinese government is biased against them does not withstand scrutiny.  This case "does not have characteristics that are most often and most strongly associated with complaints of bias in the Chinese judicial system," such as concerns over "local or national protectionism" where courts elevate the interests of local

---

[8] Plaintiffs are referring to the PRC *Civil Procedure Law's* process for initiating a case and pleading a claim. Unlike the notice pleading standard applicable in U.S. federal courts, "a plaintiff seeking to assert a claim in a PRC court must proffer preliminary evidence to support the claim."  (Decl. C (Li/Fu) ¶ 36.)  Specifically, a plaintiff must show that he has a "direct interest in this case," which requires presenting "some evidence that the plaintiff has suffered damages caused by the defendant's alleged conduct."  (*Id.* ¶ 36-37.)

or national parties over the interests of foreigners.  (Decl. D (deLisle) ¶¶ 38-39.)  COPC is a foreign company owned by a foreign parent.  The State Council's Joint Investigation Team found that COPC is responsible for the spills.  The investigation was led by the North Sea Branch of the State Oceanic Administration, which is located in Qingdao, Shandong.  A Tianjin maritime court has already accepted a case against COPC.  There is no evidence whatsoever of bias against fishermen plaintiffs.

Moreover, the adequacy inquiry is not limited solely to availability of ***judicial*** remedies, but may also include non-judicial remedies such as compensation funds the Chinese government negotiates and administers on behalf of affected citizens.  In *Tang v. Synutra International, Inc.*, the Fourth Circuit concluded that a fund to compensate citizens affected by melamine-contaminated infant formula established by the Chinese government through agreements with the responsible companies constituted an adequate alternative forum for *forum non conveniens* purposes, despite objections from unsatisfied Chinese families that the fund was insufficient and that U.S. courts alone could provide an adequate remedy.  656 F.3d at 247-52.  As the Fourth Circuit found, *forum non conveniens* dismissal was warranted, in part, because "the reach of the doctrine extends to nonjudicial alternative remedies such as the Fund which was established to specifically redress the grievances of contaminated formula victims."  *Id*. at 250.

Similarly, here the Chinese government conducted an extensive investigation, issued findings and entered into settlements with both COPC and CNOOC.  (Decl. A (Grimsley) Ex.4 pp. 8-9, June 21, 2012 SOA Report.)  The Ministry of Agriculture used one of the settlements to establish a fund for compensating affected fishermen in Hebei and Liaoning provinces, (Decl. B (Vanhegan) ¶¶ 12-13; Decl. A (Grimsley) Ex. 4 pp. 8-9, June 21, 2012 SOA Report), and specifically left open the possibility of compensating fishermen from other areas, such as

Shandong, should they present evidence of harm attributable to the Penglai 19-3 releases.  (Decl. B (Vanhegan) ¶ 13 (quoting MOA Settlement Art. 7).)  Plaintiffs have access both to Chinese courts and to this extra-judicial forum.

### b.  China is an available forum.

"A foreign forum is available when the entire case and all parties can come within the jurisdiction of that forum."  *In re Air Crash Disaster*, 821 F.2d at 1165.  Here, there is no dispute that plaintiffs, COPC and CNOOC all come within the jurisdiction of China.  Indeed plaintiffs, here, and other fishermen allegedly injured by the oil releases, have already sued COPC and CNOOC in Chinese courts.  (*See* Compl. ¶ 37; Decl. C (Li/Fu) ¶ 15.)  These are the proper parties—***not*** ConocoPhillips, against which plaintiffs have concocted a theory of inappropriate oversight and vicarious liability merely as an excuse for this U.S. suit.

Accordingly, there is no reason that this Court, in ordering dismissal, should require that ConocoPhillips consent to service in China or personal jurisdiction in Chinese courts.  As discussed in more detail below, plaintiffs have not presented well-pleaded facts establishing that ConocoPhillips has ***any*** involvement in this matter except as the corporate parent of its foreign affiliate COPC—the real defendant in interest.

Further, ConocoPhillips has found no Fifth Circuit precedent requiring a defendant to submit to foreign jurisdiction when the real party in interest is its foreign affiliate.  Although the Fifth Circuit usually requires that *forum non conveniens* dismissals be accompanied by a "return jurisdiction clause," *see Robinson v. TCI/US West Communications Inc.*, 117 F.3d 900, 907-08 (5th Cir. 1997), that rule is intended to prevent defendants from "obstruct[ing]" the plaintiff renewing its suit in the foreign forum.  *Id*.  Given that ConocoPhillips has not and will not "obstruct" plaintiffs' pending suit against COPC, the purposes of the return jurisdiction clause is satisfied, and the Fifth Circuit imposes no additional requirement that ConocoPhillips itself

[12]

"agree[] to litigate" in China or "to submit to service of process in that jurisdiction[.]" *Id.* (noting that a *forum non conveniens* dismissal "may" include such agreements) (citations omitted). Indeed, provided that ConocoPhillips does not enable COPC to "evade" the jurisdiction of Chinese courts, "the district court is given the discretion . . . to determine that the dismissal should be **unconditional**[.]" *Baris v. Sulpicio Lines, Inc.*, 932 F.2d 1540, 1551 (5th Cir. 1991) (emphasis added); *Robinson*, 117 F.3d at 908; *see also Geier v. Omniglow Corp.*, 357 Fed. App'x 377, 381 (2d Cir. 2009) (unconditional dismissal where plaintiffs could pursue claims against foreign affiliates in foreign jurisdiction); *Leetsch v. Freedman*, 260 F.3d 1100, 1103-04 (9th Cir. 2001) (unconditional dismissal where plaintiffs had also sued defendants in foreign jurisdiction).

### 2. The private and public interest factors favor dismissal.

#### a. The private interest factors strongly support dismissal.

"The factors pertaining to the private interests of the litigants include: (1) the ease of access to evidence; (2) the availability of compulsory process for the attendance of unwilling witnesses; (3) the cost of obtaining attendance of willing witnesses; (4) the possibility of a view of the premises, if appropriate; and (5) any other practical factors that make trial expeditious and inexpensive." *Saqui v. Pride Cent. Am. LLC*, 595 F.3d 206, 213 (5th Cir. 2010). These factors favor dismissal.

*First*, the overwhelming majority of evidence and proof necessary for resolving this case is located in China. All thirty plaintiffs are in China. The oil releases occurred in China, as did the response and cleanup. The marine life and fisheries resources allegedly impacted are in China. (Compl. ¶¶ 8-9.) Experts for both sides will need access to the Bohai Sea and Shandong fisheries to conduct environmental sampling and damage assessments. Additionally, most COPC employees, as well as CNOOC employees and government officials, with knowledge of

[13]

the releases and events leading up to them are in China. (Decl. B (Vanhegan) ¶ 11.) The government agency (the State Oceanic Administration) that plaintiffs allege "initially tried to cover up the spills" and that issued findings of harm that plaintiffs cite in their complaint is in China. (Compl. ¶¶ 19-20.)   The Ministry of Agriculture, which plaintiffs allege performed environmental sampling and which subsequently entered into settlements with and on behalf of fishermen, is in China. (Compl. ¶ 36.)   All of these allegations point to China.  *See In re Ski Train Fire in Kaprun Austria on Nov. 11, 2000*, 499 F. Supp. 2d 437, 447 (S.D.N.Y. 2007) (holding *forum non conveniens* dismissal appropriate in light of the fact that "[n]o relevant events occurred in the United States, no relevant evidence is located in this country, and most key defendants and key witnesses (including most plaintiffs) are found in Austria or elsewhere in Europe").

*Second*, if this case remains in the United States, much of the evidence in China would be difficult or impossible to obtain.  It is located thousands of miles beyond the Court's subpoena power.  No third-party witness in China has any reason to travel around the globe to testify in Houston, and ConocoPhillips would be unable to obtain deposition testimony of witnesses in China for use in this case.  (Decl. C (Li/Fu) ¶¶ 117-120; Decl. D (deLisle) ¶ 73.)  The document discovery and testimony available in U.S. proceedings would be limited to what is available through the Chinese courts under the Hague Convention.  (Decl. C (Li/Fu) ¶¶ 14, 113-116, 119-120; Decl. D (deLisle) ¶¶ 70-74.)   This would be limited; while PRC courts can technically impose penalties for failure to produce relevant evidence, "PRC courts are extremely cautious in imposing fines or other penalties, because the general approach to evidence in PRC proceedings is that each party should be responsible for proving its own claims, not that the court has responsibility to assist in gathering evidence."  (Decl. C (Li/Fu) ¶ 119)  Key evidence from

governmental agencies (such as the Ministry of Agriculture and State Oceanic Administration investigation files), in particular, may be nearly impossible to collect if the case is litigated here because governmental agencies are unlikely to willingly produce such evidence for a dispute in a foreign court. (*Id.* ¶ 14.)

By contrast, ConocoPhillips would not object to providing access to documents or witnesses located in the U.S., to the extent either have relevant information that would be discoverable if located in China. *See, e.g.*, *Dahl v. United Techs. Corp.*, 632 F.2d 1027, 1031 (3d Cir. 1980) (noting that even if relevant evidence were located in the United States, that fact does not warrant denying dismissal where the defendant agrees to "make witnesses and documents under its control available to the plaintiffs in [the foreign forum] should this case be dismissed").

*Finally*, if plaintiffs' claims are tried here, the parties and the Court would be substantially burdened by the fact that so much relevant testimony and documentary evidence would be in Chinese. *See*, *e.g.*, *Blanco v. Banco Indus. de Venez., S.A.*, 997 F.2d 974, 982 (2d Cir. 1993) (need to translate documents and testimony "militates strongly in favor of" foreign forum). Any Chinese-speaking witnesses, including plaintiffs, who agree to come to the United States would require interpreters, substantially increasing the cost and length of each trial. Similarly, any Chinese-language documents used in this case would have to be translated into English—a substantial undertaking. Moreover, as discussed below, this Court does not have the ability to join critical third parties such as COPC. (*Infra* pp. 24-27)

> **b.     The public interest factors also strongly support dismissal.**

China has a strong public interest in resolving these disputes in China. "The relevant public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies decided at home; (3) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; (4)

the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty." *Saqui*, 595 F.3d at 214.  These factors favor dismissal.

*First*, dismissal is appropriate here to avoid the difficulties that arise "when litigation is piled up in congested centers instead of being handled at its origin."  *Am. Dredging Co. v. Miller*, 510 U.S. 443, 448 (1994) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).  Unlike American law, Chinese law dictates the time in which various stages of civil litigation are to be completed.  (Decl. C (Li/Fu) ¶ 55.)  A trial generally is to occur within six months of the date of notice of the court's acceptance of the case.  (*Id.*)  An appeal must be filed within 15 days of delivery of a final judgment and the appeal must generally be heard and closed within three months of the appeal acceptance date.  (*Id.*)  In the Fifth Circuit, by contrast, the median time from filing of a complaint to final disposition in the appellate court is 24.2 months.  *See* Administrative Office of the U.S. Courts, *2011 Annual Report of the Director: Judicial Business of the United States Courts*, Tables C-5 & B-4A (median time to trial is 20.0 months in Southern District of Texas and median time for merits disposition of civil appeals is 10.7 months in Fifth Circuit).  Judicial efficiency favors resolution of these disputes in China, not Houston, far from where they arose.

*Second*, and of critical importance, the local interest in having this controversy decided in China clearly militates in favor of dismissal.  China, like any country, has a plain interest in ensuring appropriate compensation for injured citizens in line with local standards. *See Dowling v. Hyland Therapeutics Div., Travenol Labs., Inc.*, 767 F. Supp. 57, 59-60 (S.D.N.Y. 1991) (finding that "compensatory damages for expenses and loss of consortium could be more fairly assessed in Ireland by a trier of fact knowledgeable about expenses in that country").  Plaintiffs'

[16]

allegations insinuate lack of integrity in China's regulatory system—questions in which China has a far greater interest than any other jurisdiction. Indeed, China's State Council has said that "ocean issues involve a fundamental interest of the nation." (Decl. C (Li/Fu) ¶ 110.) To that end, China's Ministry of Environmental Protection, which is responsible for protecting the environment, has a department dedicated to preventing and controlling pollution. (*Id.*) Further compelling evidence of China's interest in these issues is the State Council's investigation, reports and settlements.

Against the very strong Chinese interests in the resolution of these cases, Texas has only the most tenuous connection to plaintiffs' claims and no interest in appointing itself the world's forum to hear all oil pollution cases at any foreign plaintiff's option. *See*, *e.g.*, *Piper*, 454 U.S. at 260-61 (any "incremental deterrence" from conducting trial in an American court "is likely to be insignificant" and such an American interest "is simply not sufficient to justify the enormous commitment of judicial time and resources that would inevitably be required if the case were to be tried here"); *Dragon Capital Partners L.P. v. Merrill Lynch Capital Servs. Inc.*, 949 F. Supp. 1123, 1132 (S.D.N.Y. 1997) ("Hong Kong has an [sic] local interest in having this 'localized controversy decided at home.' . . . . [T]he fact that the Defendant entities are based in this country is not weighty enough to allow this case to proceed in this Court.") (citation omitted).

The *third and fourth* public interest factors also favor dismissal because, while Chinese law will most likely control this dispute, plaintiffs' efforts to bring these claims in the U.S. give rise to complicated and unnecessary issues of state, federal and foreign law. "The doctrine of *forum non conveniens* . . . is designed in part to help courts avoid conducting complex exercises in comparative law." *Piper*, 454 U.S. at 251. Plaintiffs purport to plead claims under Chinese law, Texas law, and international law. (Compl. ¶¶ 69-71.) As discussed below, to the extent the claims were to proceed in the United States, they also implicate federal maritime law. (*Infra* pp.

[17]

34-37)  To the extent that federal maritime law did not displace Texas law, Texas's choice-of-law rules would apply.  *Delta Seaboard Well Servs., Inc. v. Am. Int'l Specialty Lines Ins. Co.*, 602 F.3d 340, 343 (5th Cir. 2010). "Texas courts generally follow the Restatement (Second) of Conflict of Law's 'most significant relationship' test, which entails considering the contacts listed in Restatement § 145 in light of the factors set forth in Restatement § 6." *Nat'l Union Fire Ins. Co. v. Am. Eurocopter Corp.*, No. 11-10798, 2012 WL 3642264, at *2 (5th Cir. Aug. 27, 2012). As a result, in this case, this Court would need to review Chinese, Texas, federal and international law and evaluate the policies underlying each to determine which law applies to which claims.  The doctrine of *forum non conveniens* exists precisely to avoid such unnecessary exercises.

A preliminary choice-of-law analysis suggests that the substantive law of China would likely apply to the claims.[9]  That means this Court would need to learn Chinese law, decide disputed issues of Chinese law (likely on the basis of submissions by competing legal experts from China), and then craft Chinese law jury instructions upon which an American jury could rely. The difficulty and burden of such tasks strongly favor dismissal in favor of a Chinese forum. *Forsythe v. Saudi Arabian Airlines Corp.*, 885 F.2d 285, 290-91 (5th Cir. 1989) ("A district court's avoidance of unnecessary problems involved in the application of foreign law is of 'considerable significance.'") (quotations omitted); *In re BP Shareholder Derivative Litig.*, MDL No. 10-md-2185, Civil Action No. 4:10-cv-3447, 2011 WL 4345209, at *14 (S.D. Tex. Sep. 15, 2011) (dismissing in part because of the need to apply English law); *Hull 753 Corp. v.*

---

[9] Under Texas law, the following four factors are relevant to the choice of law determination for tort claims: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Restatement (Second) of Conflict of Laws* § 145 (1971). Applying federal choice-of-law principles applicable in maritime cases would likewise point to application of Chinese law.  *See infra* p. 35.

[18]

*Elbe Flugzeugwerke GmbH*, 58 F. Supp. 2d 925, 929-30 (N.D. Ill. 1999) (resources required to litigate contested interpretations of foreign law favored dismissal).

*Finally*, the trial (or trials) of the claims of 30 (or more) Shandong fishermen would impose an enormous burden on Texas jurors. Such trials would undoubtedly be complex, multi-week affairs requiring jurors to sift through complicated testimony related to the cause and consequences of oil releases in Chinese territorial waters, including highly technical questions related to, among other things, (1) the operation of the Penglai 19-3 field, (2) the technical and other causes of the two oil releases, (3) the volume and trajectory of oil released, (4) the environmental impact of the releases, and (5) each plaintiff's specific damages. Much of this evidence would be in Chinese, adding burden and difficulty to a Texas jury's task, over and above what would be required of a Chinese fact finder. By the same token, assessing plaintiffs' damages would require Texas jurors to address issues related to a foreign economy, foreign currency and foreign practices and customs. The burden on a Texas jury would be far greater than on a Chinese forum. Given that this case has little or nothing to do with Texas, and everything to do with China, imposing that burden on a Texas jury is manifestly unfair. "[N]o public interest would be served by burdening a Texas jury with a trial concerning events that occurred half a world away." *Dunn v. A/S Em. Z. Svitzer*, 885 F. Supp. 980, 991 (S.D. Tex. 1995).

**B.      The act of state doctrine bars this case.**

Plaintiffs' claims should also be dismissed under the act of state doctrine, which bars claims that would require a U.S. court to inquire into the validity of the official acts of a foreign sovereign occurring within its jurisdiction. *See, e.g., Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 401, 423 (1964); *Spectrum Stores, Inc. v. Citgo Petrol. Corp.*, 632 F.3d 938, 954-56 (5th Cir. 2011), *cert. denied*, 132 S. Ct. 366 (2011), *and cert. denied*, 132 S. Ct. 367 (2011). As the Supreme Court has explained, "'[e]very sovereign state is bound to respect the independence

[19]

of every other sovereign state, and the courts of one country will not sit in judgment on the acts of the government of another, done within its own territory.'" *Sabbatino*, 376 U.S. at 416 (quoting *Underhill v. Hernandez*, 168 U.S. 250, 252 (1897)).   The act of state doctrine "precludes the courts of this country from inquiring into the validity of [such acts]." *Id*. at 401.

The act of state doctrine is implicated here by plaintiffs' avowed dissatisfaction with the Chinese government's handling of the Bohai Sea oil release.  Plaintiffs claim that ConocoPhillips (in fact, COPC) set up a Bohai Bay Compensation Fund and an Environmental Fund ("the Funds"), working "cooperatively with the appropriate [Chinese] governmental authorities." (Compl. ¶ 29.)  They note that ConocoPhillips (in fact, COPC) reached an agreement with China "to resolve pending government claims related to the Bohai Sea spills," (*id.* ¶ 43), but complain that "the agreement did not include the claims of the plaintiffs."  (*Id.*)  Further, plaintiffs have attempted to file suit in China, (*Id.* at ¶¶ 8, 37), and now have filed in this Court because the Chinese government supposedly "blocked" the lawsuit.  (*Id.* ¶ 8.)

The Fifth Circuit recently observed, in the course of affirming a dismissal on act of state grounds, that "exploitation of natural resources is an inherently sovereign function." *Spectrum Stores*, 632 F.3d at 954 (citations omitted).  Granting plaintiffs the relief they request would effectively require this Court to set aside multiple sovereign acts of the People's Republic of China critically related to development and protection of such natural resources (petroleum and fisheries), as well as (1) China's determinations and involvement in administering settlement funds set up by COPC and the Chinese government, (2) China's resolution of claims related to the Bohai Bay oil releases, and (3) China's treatment of the plaintiffs' lawsuit in China.

As discussed, the Chinese government has not ignored or brushed aside plaintiffs' claims, but expended substantial resources to investigate and resolve claims of Bohai fishermen arising from the two releases.  The Ministry of Agriculture did not include Shandong fishermen in the settlement, as the Joint Investigation Team found damage only to the north.  (Decl. A (Grimsley) Ex. 1, June 21, 2012 SOA Report; Compl. ¶¶ 8, 37, 43, 47.)  Plaintiffs nevertheless contend that the Chinese government supposedly blocked their suit in Shandong—although their suit has not been rejected.  (*Id.* ¶¶ 8, 37.)  Allowing plaintiffs' claims to proceed here would require this Court to disregard the Chinese government's decisions, including the underlying determination about who should be compensated for damage to China's territorial waters and how related claims should be resolved.  *See Asociacian de Reclamantes v. United Mexican States*, 561 F. Supp. 1190, 1200 (D.D.C. 1983), *aff'd on other grounds*, 735 F.2d 1517 (D.C. Cir. 1984) (after finding that it lacked jurisdiction, the court noted that if it had jurisdiction the act of state doctrine would preclude claims against Mexico for failure to compensate plaintiffs under treaty and settlement with the U.S.).  Because the act of state doctrine requires this Court to accept the validity of such acts, this Court should dismiss plaintiffs' Complaint.  *See Spectrum Stores*, 632 F.3d at 954.

It is irrelevant that plaintiffs are here suing private parties, rather than the government of China itself.  The act of state doctrine applies "even if the defendant is a private party, not an instrumentality of a foreign state, and even if the suit is not based specifically on a sovereign act," *Callejo v. Bancomer, S.A.*, 764 F.2d 1101, 1113 (5th Cir. 1985) (citation omitted).  "[T]he relevant acts are not merely those of the named defendants, but *any* governmental acts whose validity would be called into question by adjudication of the suit."  *Spectrum Stores*, 632 F.3d at 954 (citation and internal quotations omitted).

[21]

This Court should consider *Bi v. Union Carbide Chemicals & Plastics Co. Inc.*, 984 F.2d 582 (2d Cir. 1993), and defer to China's judgment about resolving an incident within its own territory. *Bi* arose in the wake of a massive industrial disaster in India. *Id.* at 583. India responded by making itself the exclusive representative of the plaintiffs, filed suit against the alleged corporate tortfeasor, and ultimately obtained a settlement, which was paid to the Indian government for the benefit of the victims. *Id.* at 583-84. Thereafter, two class actions were filed in a United States court seeking compensation for injuries caused by the disaster, alleging the settlement was inadequate and that plaintiffs had not been appropriately represented. *Id.* at 584. In dismissing for lack of standing, the Court relied heavily on the "concerns underlying" the act of state doctrine. *Id.* at 584-87. The court explained that if it were "to pass judgment on the validity of India's response to a disaster that occurred within its borders, it would disrupt our relations with that country and frustrate the efforts of the international community to develop methods to deal with problems of this magnitude in the future." *Id.* at 586. As in *Bi*, plaintiffs' claims here would require this Court to adjudicate whether the Chinese government appropriately settled claims and is appropriately administering the settlement funds to compensate its citizenry and restore the environment. That is precisely the type of interference the act of state doctrine is meant to avoid.

**C.    This Court should dismiss based on international comity.**

Comity considerations likewise require dismissal of this case in their own right. As the Supreme Court has noted, international comity is "the spirit of co-operation in which a domestic tribunal approaches the resolution of cases touching the laws and interests of other sovereign states." *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for the S. Dist. of Iowa*, 482 U.S. 522, 543 n.27 (1983); *see also Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 371 (5th Cir. 2003).

Those considerations strongly counsel non-interference by this Court in China's efforts to resolve disputes among itself, plaintiffs (who are Chinese nationals) and companies involved in an oil release in Chinese waters.  China has a far greater interest than the United States in determining how to resolve those issues.  Where, as here, "another sovereign's interest in the proceedings is greater than the United States' interests, or when a foreign sovereign has legislated on a matter of its own significant national concern," U.S. courts may abstain from resolving the claims.  *ITL Int'l, Inc. v. Walton & Post, Inc.*, 741 F. Supp. 2d 1313, 1316 (S.D. Fla. 2010) (quoting *Hilton v. Guyot*, 159 U.S. 113, 164 (1895)).

Likewise, comity counsels against interfering with litigation pending in foreign jurisdictions.  *Karaha Bodas*, 335 F.3d at 371-74.  The interests of comity here are particularly acute, for these Chinese nationals explicitly ask this Court to side with them in criticizing Chinese government decisions.  This Court should resist being dragged into a matter for which it is not institutionally equipped, *i.e.*, questioning whether the government endorsed settlement structures and Chinese court decisions are adequate or legal.  *See In re Nazi Era Cases Against German Defs. Litig.*, 129 F. Supp. 2d 370, 388 (D.N.J. 2001).  International comity counsels ***deference*** to, not imprudent U.S. court conflict with, the policy decisions of foreign governments in resolving matters within their own jurisdiction, such as China's effort to resolve the Bohai Sea oil release.  *See ITL Int'l*, 741 F. Supp. 2d at 1316 ("'[I]n some private international disputes the *prudent* and *just* action for a federal court is to abstain from the exercise of jurisdiction.") (quoting *Turner Entm't Co. v. Degeto Film*, 25 F.3d 1512, 1518 (11th Cir. 1994) (emphasis added)).

[23]

**D.**   **The Court should dismiss for failure to join indispensable party ConocoPhillips China (COPC).**

Although the Complaint squarely alleges COPC's critical involvement in the oil releases from which plaintiffs' claims arise, it is notably absent from this suit.  In cases such as this, Federal Rule of Civil Procedure 12(b)(7) allows dismissal for "failure to join a party under Rule 19."  Dismissal under Rule 12(b)(7) is appropriate because, first, COPC is a person that "should be joined to the lawsuit," and, second, because joinder is not possible and the case should not be continued in COPC's absence.  *Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1309 (5th Cir. 1986).

**1.**   **COPC is a necessary party whose joinder is not feasible.**

A party must be joined if in that person's absence, "the court cannot accord complete relief among existing parties."  FED. R. CIV. P. 19(a)(1)(A).  The Complaint itself alleges that COPC was an active participant in the alleged torts, (*see, e.g.*, Compl. ¶¶ 66-67, 74-75, 93 (alleging negligence in the design, drilling, construction, and operation of oil wells and negligent training of employees)), and seeks to hold ConocoPhillips liable for COPC's actions.  (*See, e.g.*, Compl. ¶¶ 59-64.)  Active participants in alleged torts are presumptively necessary parties that should be joined.  *Freeman v. Northwest Acceptance Corp.*, 754 F.2d 553, 559 (5th Cir. 1985); *Haas v. Jefferson Nat'l Bank*, 442 F.2d 394, 398 (5th Cir. 1971); *In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 906 (C.D. Cal. 2011) (noting that active participants in the tort must be joined to afford complete relief).  Their "'presence is critical to the disposition of the important issues in the litigation.'"  *Freeman*, 754 F.2d at 559 (quoting *Haas*, 442 F.2d at 398).

This rationale applies equally to a corporation's foreign subsidiary; joinder is necessary where it was an active participant in the alleged tort.  *Timberlake v. Synthes Spine, Inc.*, Civil Action No. V-08-4, 2011 WL 2607044, at *2-3 (S.D. Tex 2011) (holding that a foreign subsidiary is a necessary party); *see also In re Toyota Motor Corp.*, 785 F. Supp. 2d at 905

[24]

(noting that necessity turns on whether the subsidiaries were active participants in the alleged tort).

The fact that plaintiffs improperly seek to impute COPC's liability to ConocoPhillips does not change this result.  As described in greater detail below, (*infra* pp. 40-43), parent corporations generally are not liable for the acts of subsidiaries.  *See United States v. BestFoods*, 524 U.S. 51 (1998).  Plaintiffs' conclusory assertions to the contrary are not entitled to the assumption of truth. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("[P]leadings that…are no more than conclusions, are not entitled to the assumption of truth.").  Further, the declaration of Graham Vanhegan establishes that ConocoPhillips and COPC are distinct entities.  (Decl. B (Vanhegan) ¶¶ 3-10.)[10]  COPC cannot be presumed to be the equivalent of ConocoPhillips for purposes of deciding which parties should be joined.  In all events, even if COPC might possibly be deemed ConocoPhillips's alter ego, COPC's presence in this dispute remains necessary.  *See Golden v. Omni Energy Servs. Corp.*, 242 F. App'x 965, 968 (5th Cir. 2007) (holding, pre-discovery, that "the mere possibility of" two corporations "qualifying as alter egos of one another does not render [the unnamed corporation] dispensable to this litigation").

Any effort to join COPC in this suit, however, would be futile.  To satisfy the requirements of due process, COPC would have to have "certain minimum contacts" with Texas "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Wash. Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (citation and quotations omitted).  There is neither general nor specific jurisdiction over COPC.

---

[10] In ruling on a 12(b)(7) motion, a court may go outside the pleadings and look to extrinsic evidence.  *Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 480 n.4 (7th Cir. 2001); *Indian Harbor Ins. Co. v. KB Lone Star, Inc.*, Civil Action No. H-11-CV-1846, 2012 WL 1038658, at *2 (S.D. Tex. 2012) (explaining that in ruling on a 12(b)(7) motion the district judge is not limited to the pleadings and may rely on affidavits); *Timberlake*, 2011 WL 2607044 *2; *see also*, 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1359 (3d ed. 2004).

[25]

General jurisdiction does not exist because COPC's contacts with Texas are not "continuous and systematic" such that it would be appropriate to subject it to suit here over claims having no relation to any Texas contacts. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984). COPC is a Liberian corporation located in and conducting business in China; COPC conducts no business in Texas. (Decl. B (Vanhegan) ¶¶ 5, 7.) As a result, this Court cannot exercise general jurisdiction over COPC.

Likewise, specific jurisdiction would not be proper because Texas activity did not "g[i]ve rise to the episode-in-suit." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2848 (2011). The Complaint nowhere alleges that COPC took any actions in Texas, or directed its behavior at Texas. Texas may not assert specific jurisdiction "with respect to matters unrelated to the forum connections." *Id.* at 2849.

The fact that the parent ConocoPhillips is subject to jurisdiction in Texas does not create jurisdiction over its subsidiary. "As a general rule . . . personal jurisdiction over a non-resident corporation may not be based solely upon the contacts with the forum state of another corporate entity with which the defendant may be affiliated." *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 346 (5th Cir. 2004) (citations omitted); *see also Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir. 1983). Exercising jurisdiction over COPC based on ConocoPhillips' presence here would require the plaintiff to demonstrate "clear evidence" of "something beyond" the mere existence of a corporate relationship between a resident and a nonresident entity. *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir. 1999) (citation and internal quotations omitted). The cases "demand proof of control by [one corporation] over the internal business operations and affairs of another corporation to make the other its agent or alter ego, and hence fuse the two together for jurisdictional purposes."

[26]

*Freudensprung*, 379 F.3d at 346 (citing *Hargrave*, 710 F.2d at 1160) (quotations omitted).  The fact that plaintiffs' conclusory alter ego allegations fail to provide any specific supporting facts "compel[s] the conclusion" that the presumption of corporate separateness has not been overcome.  *See id.* at 346-47.

> ### 2.        This suit should not proceed without COPC.

The fact that COPC cannot be joined to this suit means that, under Rule 19(b), the suit should not, in equity and good conscience, proceed here at all.   The relevant factors bearing on that conclusion are "[1] to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; [2] the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; [3] whether a judgment rendered in the person's absence will be adequate; [and 4] whether the plaintiff will have an adequate remedy if the action is dismissed for non-joinder."   *Pulitzer-Polster*, 784 F.2d at 1312 n.6 (quoting *Provident Tradesmen's Bank & Trust Co. v. Patterson*, 390 U.S. 102, 109–11 (1968)); *see also* Fed. R. Civ. P. 19(b).

*First*, the extent to which the judgment may "as a practical matter impair or impede [COPC's] ability to protect [its] interest," Fed. R. Civ. P. 19(a)(1)(B)(i), counsels dismissal. Where a party was an active participant in an alleged tort, its absence from a suit generally requires dismissal. *Timberlake*, 2011 WL 2607044, at *4 (quoting *Polanco v. H.B. Fuller Co.*, 941 F. Supp. 1512, 1523 (D. Minn. 1996)); *see also In re Toyota Motor Corp.*, 785 F. Supp. 2d at 907 ("A judgment entered against the named . . . Defendants might have a preclusive effect on the unnamed foreign entities and weaken their bargaining position and/or impair their ability to protect their own interests in any current and future litigation.").   An entity's status as a subsidiary does not alter this fact; parent and subsidiary may have differing interests at trial. *See Freeman*, 754 F.2d at 559 (explaining that the defendant's status as the parent of wholly-owned

subsidiary is irrelevant if subsidiary is needed for full adjudication of controversy); *In re Toyota Motor Corp.*, 785 F. Supp. 2d at 908 (noting parent and subsidiary interests may diverge at trial).

*Second*, there is no readily available mechanism to fashion relief to avoid prejudicing COPC. Adjudicating this case would necessarily entail conclusions about COPC's responsibility, for the Complaint explicitly seeks to impute COPC's liability to ConocoPhillips. (*See* Compl. ¶¶ 59-64.) This case could thus become negative precedent, or worse, in other suits against COPC. *Pulitzer-Polster*, 784 F.2d at 1310-13. Where the parties propose no remedy that would avoid prejudice, and none is otherwise apparent, a court may find that the second Rule 19(b) factor counsels in favor of dismissal. *See Philippines v. Pimentel*, 553 U.S. 851, 869-70 (2008).

*Third*, "the public stake in resolving disputes by wholes, whenever possible," *Pimentel*, 553 U.S. at 870 (citation and internal quotations omitted), counsels dismissal here. Given the centrality of COPC's conduct, any effort to avoid prejudicing COPC would require determination of its responsibility to be left for another day. This is contrary to the public interest in avoiding piecemeal resolution of disputes, and indicates that dismissal in COPC's absence would be appropriate.

*Finally*, Rule 19(b)'s fourth factor does not preclude dismissal. As the *forum non conveniens* analysis shows, plaintiffs may have an adequate remedy because they may pursue suit against COPC in China. While plaintiffs complain that the Chinese courts have not yet accepted their claims, they have not denied the plaintiffs relief either. (Compl. ¶¶ 8, 37, 47.) Still, even if plaintiffs have no adequate remedy if this case is dismissed, it would not provide a sufficient basis for proceeding without COPC. "Dismissal under Rule 19(b) will mean, in some instances, that plaintiffs will be left without a forum for definitive resolution of their claims." *See generally Pimentel*, 553 U.S. at 872.

[28]

**E.      The Complaint fails to state cognizable claims.**

While *forum non conveniens*, the act of state doctrine, comity and Rule 19 counsel dismissal of this case, *in toto*, the fact that this lawsuit does not arise from events in the United States or Texas gives rise to fundamental flaws in each of plaintiffs' specific claims under the Alien Tort Statute (28 U.S.C. § 1350) and state law theories of negligence, public and private nuisance, trespass, and unjust enrichment.  (*See* Compl. ¶¶ 65-91.)

*First*, as described in subsection 1, *infra*, plaintiffs state no basis for federal question jurisdiction, nor any cognizable claim under the Alien Tort Statute.  *Second*, if these claims remain in this Court—and they should not—federal maritime law displaces, and the foreign affairs doctrine would preempt, all of plaintiffs' state law claims, as described in subsection 2.a, *infra*.  But even applying either federal maritime law or Texas law, plaintiffs have failed to state claims for negligence, nuisance, trespass, or unjust enrichment, as described in subsections 2.b.-2-e, *infra*.  This is true notwithstanding plaintiffs' conclusory (and inadequate) effort to pierce the corporate veil or hold ConocoPhillips liable for the acts of COPC on the basis of *respondeat superior* theories.  *Finally*, as described in subsection 2.f, *infra*, plaintiffs' claim for equitable relief is not an independent cause of action and should be dismissed.

**1.      Plaintiffs state no cognizable federal claim, nor basis for jurisdiction, under the Alien Tort Statute (Fifth Cause of Action).[11]**

The Alien Tort Statute ("ATS") provides "original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350.  It confers jurisdiction in federal courts only over torts that violate either a

---

[11] Plaintiffs' failure to allege a basis for jurisdiction under the ATS is coupled with a failure adequately to plead a basis for diversity jurisdiction.  While plaintiffs plead diversity of citizenship because they "are citizens of China" and "Defendant ConocoPhillips is a citizen of Texas" (Compl. ¶ 3.), the amount in controversy for each plaintiff exceeds only $50,000.  (*Id.*).  This is inadequate to establish federal jurisdiction under 28 U.S.C. § 1332(a)(2), which requires that the amount in controversy exceed $75,000.  ConocoPhillips assumes plaintiffs would attempt to correct this problem, if allowed.

treaty of the United States or customary international law.  *Ali Shafi v. Palestinian Auth.*, 642 F.3d 1088, 1091 (D.C. Cir. 2011); *Sosa v. Alvarez-Machain*, 542 U.S. 692, 714 (2004) (rejecting the argument that the ATS is "authority for the creation of a new cause of action for torts in violation of international law").  Plaintiffs' Complaint fails to allege any such violation.

### a.   There is no treaty of the United States that provides a basis for ATS jurisdiction over plaintiffs' claims.

Because treaty rights generally accrue to sovereign nations and not to individuals, *see U.S. v. Zabaneh*, 837 F.2d 1249, 1261 (5th Cir. 1988), a private party has no right of action under the ATS for violations of U.S. treaties unless the treaty is self-executing and provides for a private right of action.  *See Sosa*, 542 U.S. at 734-5 (2004) (rejecting attempt to use ratified, but not self-executing treaty as basis for ATS claim); *see also Medellin v. Texas*, 552 U.S. 491, 506 n.3 (2008) (noting several circuits, including the Fifth Circuit, "presume[] that treaties do not create privately enforceable rights in the absence of express language to the contrary").  A treaty is self-executing only if it requires no implementing legislation.  *Medellin*, 552 U.S. at 505-06.

The treaties cited by Plaintiffs in their Complaint—namely, the 1973 International Convention for the Prevention of Pollution from Ships, as amended in 1978 ("MARPOL"), the Convention on the High Seas, the International Convention on Civil Liability for Oil Pollution Damage (the "CLC"), and the United Nations Convention on the Law of the Sea ("UNCLOS"), Compl. ¶¶ 69, 94-95—do not confer ATS jurisdiction.  Those treaties are not self-executing or have not been ratified by the United States, and they do not apply to oil spills in territorial waters of a foreign country in any event.[12]  The bulleted paragraphs below provide a brief description of each treaty.

---

[12] On May 15, 1996, the People's Republic of China reiterated its long-held position that the Bohai Sea is part of its territorial waters.  Daniel Dzurek, *The People's Republic of China Straight Baseline Claim*, 4 IBRU Boundary and Security Bulletin 77 (Summer 1996) available at https://www.dur.ac.uk /ibru/publications/view/?id=92.  Relevant

- MARPOL is not self-executing, but requires implementing legislation; it therefore does not provide for a private right of action. *United States v. Pena*, 684 F.3d 1137, 1142 (11th Cir. 2012); *United States v. Royal Caribbean Cruises, Ltd.*, 11 F. Supp. 2d 1358, 1367 (S.D. Fla. 1998). Moreover, MARPOL provides that the nation in question—in this case China—should prosecute treaty violations, pursuant to that nation's laws. MARPOL, art. 2, para. 5; article 4.

- The Convention on the High Seas' provisions relating to control of pollution are likewise not self-executing, but require implementing regulations and do not provide for private rights of action. *See* Convention on the High Seas, article 24 ("Every State shall draw up regulations to prevent pollution of the seas by the discharge of oil from ships or pipelines or resulting from the exploitation and exploration of the seabed and its subsoil, taking account of existing treaty provisions on the subject."); *De La Cruz v. Gulf Coast Marine & Assoc., Inc.*, Civil Action No. 9-09-cv-167, 2011 WL 846100, at *4 (E.D. Tex. March 7, 2011) ("nothing in the Convention on the High Seas suggests that individuals have a private cause of action for personal injuries against private entities for alleged violations of its provisions").

- The CLC has not been ratified by the U.S. Senate. *See Kiobel v. Royal Dutch Petrol. Co.*, 621 F.3d 111, 138 (2nd Cir. 2010) (as to 1969 Convention); *In re Oil Spill by the Oil Rig DEEPWATER HORIZON in the Gulf of Mexico, on April 20, 2010 (In re Deepwater Horizon)*, 835 F. Supp. 2d 175, 182 (E.D. La. 2011) (as to 1969 Convention and 1992 Protocol). It is therefore not a U.S. treaty on which an ATS claim may be based. *See United States v. Jho*, 534 F.3d 398, 406-07 (5th Cir. 2008) (unratified treaty is not a source of U.S. federal law, except to the extent it describes customary principles of international law); *In re Otal Invs. Ltd.*, No. 03 Civ. 4304, 03 CIV. 9962, 2005 WL 1588986, at *4 (S.D.N.Y. Jul.8, 2005) (holding that unratified treaty is not binding on a U.S. court where the subject matter of the treaty governs a substantive basis for a claim). The CLC, moreover, applies only to oil releases and "pollution damage" from sea-going "ships" carrying oil in bulk

---

provisions of UNCLOS can be read to support the PRC's claims related to the Bohai Sea. Seoung-Yong Hong & Jon Van Dyke, *Maritime Boundary Disputes, Settlement Processes, and the Law of the Sea* 56 (Koninklijke Brill NV 2009). While the U.S. Senate has not ratified UNCLOS, the United States has recognized that the treaty's baseline provisions—those used in determining whether a sovereign's territorial waters—reflect customary international law. *See United States v. Alaska*, 503 U.S. 569, 588 n.10 (1992). Also, the U.S. apparently does not dispute the PRC's 1996 boundary claims regarding the Bohai Sea. Hong & Dyke 56, *citing* J. Ashley Roach & Robert W. Smith, *United States Responses to Excessive Maritime Claims* 33-34 (2d ed. 1996) (omitting any reference to China's Bohai Bay when they list the U.S. protests to historic waters claims); Zou Keyuan, *Law of the Sea in East Asia: Issues and Prospects* 145 (Routledge 2005) (after UNCLOS the U.S. has not raised any controversy regarding whether the Bohai Sea is the PRC's historic territorial waters "since it can be claimed both judicially and historically"). Numerous courts hence have recognized that the Bohai Sea comprises China's territorial waters. *See, e.g, Apache Bohai Corp., LDC v. Texaco China, B.V.*, 330 F.3d 307, 308 (5th Cir. 2003); *Compania Naviera Joanna SA v. Koninklijke Boskalis Westminster NV*, 569 F.3d 189, 192-193, 201 (4th Cir. 2009); *Koninklijke Boskalis Westminster NV v. Mediterranean Shipping Co., S.A.*, Civil Action No. 07-2796, 2009 WL 270237, at *1 (E.D. La. 2009).

[31]

as cargo, not to stationary platforms and drilling activities like those alleged here. CLC, 1992 Protocol, art. I, paras. 1, 6(a) (defining "ships" and pollution covered by treaty); CLC, 1992 Protocol, art. II(a) (same).  In addition, the CLC provides that a private right of action must be brought in the courts of the country where the pollution occurs (*i.e.*, China).  *Id.* art. IX, ¶ 1 ("Where an incident has caused pollution damage in the territory, including the territorial sea or an area referred to in Article II, of one or more Contracting States . . . , actions for compensation may only be brought in the Courts of any such Contracting State or States.").

- UNCLOS has not been ratified by the U.S. Senate.  *Jho*, 534 F.3d at 406.  And there is no private right of action under UNCLOS in any event.  *De La Cruz*, 2011 WL 846100, at *4.  Moreover, its provisions regarding prevention of marine pollution apply only to party governments, not private actors.  *See* UNCLOS, Part XII (arts. 192-237). UNCLOS imposes no duties on private parties to take measures to control marine pollution.  *See, e.g.*, UNCLOS, art. 194 paras. 1-2.

Plaintiffs, in short, have stated no cognizable treaty-based claim to support ATS jurisdiction.

### b.    There is no "law of nations" support for plaintiffs' claims.

If no U.S. treaty applies, a claim under the ATS may only be brought for torts in violation of the "law of nations," *i.e.*, "customary international law." *Abecassis v. Wyatt*, 704 F. Supp. 2d 623, 650-51 (S.D. Tex. 2010); *Flores v. S. Peru Copper Corp.*, 414 F.3d 233, 237 n.2 (2d Cir. 2003).  "Customary international law" is limited to principles that are "specific, universal and obligatory."  *Sosa*, 542 U.S. at 732 (quoting lower court with approval that rules of customary international law must be "specific, universal, and obligatory") (citation and internal quotation marks omitted).

This standard is very high.  As a recent Southern District of Texas case recognized, "[d]eference to legislative policymaking and implications for foreign relations require courts to use 'great caution' in finding additional international law violations actionable." *Abecassis*, 704 F. Supp. 2d at 651 (citing *Sosa*, 542 U.S. at 725-28).  Courts have thus generally refused to find that environmental torts violate customary international law.  *See*, *e.g.*, *Beanal v. Freeport-McMoran, Inc.*, 197 F.3d 161, 166-167 (5th Cir. 1999) (stating that "***federal courts should***

[32]

*exercise extreme caution when adjudicating environmental claims under international law* to insure that environmental policies of the United States do not displace environmental policies of other governments"; holding that environmental damage due to mining operations did not violate customary international law) (emphasis added); *Flores*, 414 F.3d at 255-59 (refusing to find any rule of customary international law against intra-national pollution so as to provide a basis for jurisdiction under the ATS); *In re Agent Orange Prod. Liab. Litig.*, 373 F. Supp. 2d 7, 130-38 (E.D.N.Y. 2005), *aff'd*, 517 F.3d 104 (2nd Cir. 2008) (rejecting ATS claims based on customary international law for environmental damage brought by Vietnamese nationals allegedly injured through exposure to herbicides used as a defoliant during the Vietnam War). Despite extensive citations to case law in their Complaint, plaintiffs tellingly cite no case suggesting that oil spills in the territorial waters of another sovereign, such as those alleged here, violate customary international law.[13]

    **c.**    **ATS jurisdiction does not extend to corporate defendants and should not extend to torts within the territory of a foreign state.**

Plaintiffs' ATS claim is also defective because the ATS does not apply to claims against corporate defendants and should not be read to apply to tortious conduct occurring within the territory of a foreign sovereign. When at statute, like the ATS, "gives no *clear indication* of an extraterritorial application, it has none." *Morrison v. Nat'l Austl. Bank*, 130 S. Ct. 2869, 2878

---

[13] The only case of which ConocoPhillips is aware that comes remotely close to such a suggestion is itself an outlier, *Sarei v. Rio Tinto PLC.*, 221 F. Supp. 2d 1116 (C.D.Cal. 2002), *aff'd in part, rev'd in part and vacated in part*, 487 F.3d 1193 (9th Cir 2007), which this Court should neither follow nor extend. Papua New Guinea island residents sued Rio Tinto for, among other things, violating the law of nations by dumping mining waste into the sea. The court held that UNCLOS embodied customary international law—*despite not having been ratified by the United States*—and that the plaintiffs' allegations sufficed to state a claim under UNCLOS. *Id.* at 1160-62. The court made clear, however, that allegations of pollution and damage to the *open sea* (there, the Pacific Ocean), not merely to territorial waters, was necessary for such a claim. *Id.* at 1162. Although *Sarei* is an aberration that the Court should not follow, even it would not authorize plaintiffs' ATS claim.

(2010) (emphasis added).[14]   Both of those issues are before the U.S. Supreme Court.  *See Kiobel v. Royal Dutch Petrol. Co.*, 132 S. Ct. 472 (Oct. 17, 2011) (granting certiorari to review Second Circuit decision that corporate defendants are not subject to ATS jurisdiction, 621 F.3d 111, 1445 (2d Cir. 2010)); *Kiobel v. Royal Dutch Petrol. Co.*, 132 S. Ct. 1738 (Mar. 5, 2012) (directing additional briefing and re-argument on whether ATS claims may include torts committed within territory of foreign nation).   A decision in favor of the respondent, Royal Dutch Petroleum, on either issue would independently require dismissal of the ATS claim here.

**2.    Plaintiffs fail to state claims under Texas state law.**

**a.    Federal maritime law and the foreign affairs doctrine bar application of Texas state law (First through Fourth Causes of Action).**

**i.    General maritime law—including choice of law rules recognizing China's overriding interests—displaces Texas law.**

While plaintiffs purport to invoke Texas law, there are no circumstances under which it could apply to claims arising in Chinese territorial water.   In United States courts, general maritime law would displace state law in matters such as this.   And relevant maritime choice-of-law principles recognize China's overriding interests in applying its law to the claims made here.

Although plaintiffs have not invoked admiralty jurisdiction (*see* Compl. ¶¶ 3-6), "if the case sounds in admiralty, it would be inappropriate to apply [Texas] law or any other state's law, instead of federal admiralty law."  *Gibbs ex rel. Gibbs v. Carnival Cruise Lines*, 314 F.3d 125, 131 (3d Cir. 2002); *see also Cont'l Cas. Co. v. Canadian Universal Ins. Co.*, 605 F.2d 1340, 1344 (5th Cir. 1979).   A claim "sounds in admiralty" if the activity at issue satisfies a locality and a connection test.  *Coats v. Penrod Drilling Corp.*, 61 F.3d 1113, 1118-19 (5th Cir. 1995) (en banc) (citing *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534

---

[14] It is well-established that "'legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States.'"  *EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 248 (1991) (*citing Foley Bros. v. Filardo*, 336 U.S. 281, 285 (1949)).

(1995)).  The locality test is satisfied if the tort occurred on navigable waters.  *Jerome B. Grubart, Inc.*, 513 U.S. at 534.  The connection test is met where the incident could have "'a potentially disruptive impact on maritime commerce,'" and "'the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity.'" *Jerome B. Grubart, Inc.*, 513 U.S. at 534 (citations and internal quotations omitted).

The location and connection requirements are satisfied here.  The oil releases occurred in the Bohai Sea of China, a body of navigable water.[15]  In cases involving oil releases on navigable waters, courts rightly find "'a potentially disruptive impact on maritime commerce.'"  *See, e.g.*, *In re Deepwater Horizon*, 808 F. Supp. 2d 943, 951 (E.D. La. 2011) (citation omitted); *Slaven v. BP Am., Inc.*, 786 F. Supp. 853, 856-57 (C.D. Cal. 1992).  The drilling platforms in the Bohai Sea bear a substantial relationship to traditional maritime activity.  *See In re Deepwater Horizon*, 808 F. Supp. 2d at 951; *see also Theriot v. Bay Drilling Corp.*, 783 F.2d 527, 538-39 (5th Cir. 1986) ("Oil and gas drilling on navigable waters aboard a vessel is recognized to be maritime commerce.").

Because the alleged torts sound in admiralty, maritime choice-of-law rules apply and require application of Chinese law.[16]  *See Coats v. Penrod Drilling Corp.*, 5 F.3d 877, 885-56 (5th Cir. 1993) (applying admiralty choice-of-law test notwithstanding that plaintiff invoked diversity jurisdiction); *see also Gibbs*, 314 F.3d at 131; *Preston v. Frantz*, 11 F.3d 357, 358-59

---

[15] A water is navigable for the purposes of admiralty jurisdiction if it is used or may be used for commerce.  *See, e.g.*, *The Daniel Ball*, 77 U.S. (10 Wall.) 557, 563 (1870).  Plaintiffs clearly allege that the Bohai Sea is used for commerce, specifically fishing, "aquaculture hatcheries" and oil and gas drilling.  (*See* Compl. ¶¶ 10-13.)

[16] The choice-of-law analysis in diversity cases—applying the choice-of-law rules of the forum state, here, Texas—renders the same result:  Chinese law governs.  *See supra* pp. 17-18 (discussing choice-of-law issues).  The alleged injury occurred in the territorial waters of China; the alleged conduct that caused the oil spill occurred in China; the plaintiffs are Chinese nationals who reside in China and COPC, the real party in interest, is a Liberian corporation headquartered in China.  ConocoPhillips' headquarters is the **only** connection to Texas and does not support applying Texas law to plaintiffs' claims.  Indeed, Texas "does not apply the law of the state where a defendant is headquartered to every claim for economic damages that can be alleged against the defendant."  *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 698 (Tex. 2002).

(2d Cir. 1993); *Carey v. Bahama Cruise Lines*, 864 F.2d 201, 206 (1st Cir. 1988). The Supreme Court has reiterated the importance of choice-of-law considerations in maritime cases: "those principles of choice of law that are consonant with the needs of a general federal maritime law and with due recognition of our self-regarding respect for the relevant interests of foreign nations in the regulation of maritime commerce as part of the legitimate concern of the international community" must be applied. *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 382-83 (1959), *superseded by statute on other grounds*, *Miles v. Apex Marine Corp.*, 498 U.S. 19 (1990).

The relevant factors for balancing the foreign and domestic interests in admiralty cases are: "(1) the place of the wrongful act; (2) the law of the flag; (3) the allegiance or domicile of the injured [person]; (4) the allegiance of the defendant shipowner; (5) the place of the contract [or other relationship]; (6) the inaccessibility of the foreign forum; (7) the law of the forum; and (8) the shipowner's base of operations." *Coats*, 61 F.3d at 1119 (citing *Hellenic Lines Ltd. v. Rhoditis*, 398 U.S. 306, 308-09 (1970)); *Lauritzen v. Larsen*, 345 U.S. 571, 583-91 (1953). Applied to oil platform operations, the significance of these factors "may vary from that in the traditional shipping context in which the *Lauritzen-Rhoditis* test arose." *Coats*, 61 F.3d at 1119 (citation omitted). "The place of the wrongful act, the allegiance or domicile of the injured, and the place of the contract [or other relationship], which are less important in the shipping context, are more significant in nontraditional cases." *Id.* In particular, in cases involving offshore oil rigs, the place of the alleged tort "assumes greater importance," *Fogelman v. ARAMCO (Arabian American Oil Co.)*, 920 F.2d 278, 282 (5th Cir. 1991), and is afforded "considerable weight" *Coats*, 61 F.3d at 1120. By the same token, "[p]articularly when nontraditional maritime activities with relatively permanently based vessels are involved, 'it is the base from which the

[36]

rig is operated on a day-to-day basis rather than the base of operations of the corporate or ultimate owner of the rig which is important for choice of law purposes.'" *ARAMCO*, 920 F.2d at 284 (quoting *Bailey v. Dolphin Int'l, Inc.*, 697 F.2d 1268, 1275 n.22 (5th Cir. 1983), *overruled on other grounds en banc*, *In re Air Crash Disaster*, 821 F.2d 1147 (5th Cir. 1987)).[17]   These primary choice-of-law factors weigh heavily in favor of applying Chinese law:  plaintiffs are all domiciled in China (Compl. ¶ 1); the alleged tort occurred in China's Bohai Sea (*id.* ¶¶ 2, 7); the alleged relationship between ConocoPhillips and plaintiffs (*i.e.*, non-contractual tort duties) centers around Chinese law (*id.* ¶¶ 52-58); and the day-to-day base of operations is in China, where the drilling platforms are located, operated, and maintained (*Id.* ¶ 14).

Secondary choice-of-law factors further support application of Chinese law.   While ConocoPhillips's corporate allegiance is the United States, plaintiffs explicitly seek to hold it responsible for the acts of its foreign subsidiary, COPC (*See id.* ¶¶ 59-64), which is headquartered in China.   The law of the forum is federal maritime law; but, as noted above, that law includes a sensitive "recognition of our self-regarding respect for the relevant interests of foreign nations," *Romero*, 358 U.S. at 382-83, highlighting China's overriding interests.   The only Texas connection is the parent corporation's location and plaintiffs' calculated decision to sue here.   Neither is sufficient to displace China's overriding interest in applying its law, which plaintiffs themselves invoked.  (Compl. ¶¶ 52-58.)

### ii.     The foreign affairs doctrine bars plaintiffs' state law claims.

To the extent that Texas state law was not displaced by maritime law, the foreign affairs doctrine would bar its application to avoid interfering with U.S. foreign relations.   *Am. Ins. Ass'n*

---

[17] "We look to the location of day-to-day operations even when the [defendant] is a wholly-owned subsidiary of an American corporation, so long as the foreign subsidiary was not formed specifically to evade obligations of the parent corporation under American law."  *ARAMCO*, 920 F.2d at 284 (citing *Vaz Borralho v. Keydril Co.*, 696 F.2d 379, 388-89 (5th Cir. 1983), *overruled on other grounds en banc In re Air Crash Disaster*, 821 F.2d 1147 (5th Cir. 1987)).

*v. Garamendi*, 539 U.S. 396, 413 (2003); *Zschernig v. Miller*, 389 U.S. 429, 432-34 (1968); *see United States v. Pink,* 315 U.S. 203, 233 (1942) ("Power over external affairs is not shared by the States; it is vested in the national government exclusively."). Even where the federal government has not taken specific action on a topic, state law may impermissibly intrude into foreign affairs. *Zschernig*, 389 U.S. at 439-41 (invalidating property law that required judgments about actions and policies of foreign nations, even though the law did not directly conflict with federal law or policy). A state law must yield when the law disturbs foreign affairs. *See Garamendi*, 539 U.S. at 419-20 n.11; *Zschernig*, 389 U.S. at 441.

If a proposed application of state law falls within an area of traditional state competence but affects foreign relations, the Court must weigh the state's interest in applying its law against the strength of the federal foreign policy interest. *See Garamendi*, 539 U.S. at 419-20 n.11; *Mujica v. Occidental Petrol. Corp.*, 381 F. Supp. 2d 1164, 1187 (C.D. Cal. 2005). State law is preempted where there is more than an incidental conflict with federal policy or where the state interest is weak. *See Garamendi*, 539 U.S. at 419-20 n.11; *Mujica*, 381 F. Supp. 2d at 1187.

Under this analysis, the foreign affairs doctrine bars plaintiffs' state law claims because Texas has no appreciable interest in applying its tort law to these incidents, which occurred in a foreign jurisdiction. *See Vizcarra v. Roldan*, 925 S.W.2d 89, 91-92 (Tex. App.—El Paso 1996); *Figueroa v. Williams*, Civil Action Nos. V-05-56, thru V-05-62, 2010 WL 5387599, at *6 (S.D. Tex. 2010) ("Texas has no direct concern about the damages awarded to a foreign domiciliary.").

Conversely, the federal government has an appreciable interest in not applying Texas tort law to this case to avoid Texas interference in (1) China's involvement in administering settlement funds set up by COPC and China to resolve claims arising from the Bohai Bay releases, (2) China's resolution of claims related to the Bohai Bay releases, and (3) the Chinese

[38]

court's decision to hold in abeyance accepting or rejecting plaintiffs' attempted lawsuit.[18] Further, second-guessing foreign courts violates foreign policy because it may lead to the perception that the U.S. government does not recognize the legitimacy of the foreign court. *See Mujica*, 381 F. Supp. 2d at 1188.

> **b.** **Plaintiffs fail adequately to plead ConocoPhillips's negligence (First Cause of Action).**

In plaintiffs' first cause of action, they assert that they suffered damages from ConocoPhillips' alleged negligence. But as to *how* ConocoPhillips may have acted negligently, plaintiffs offer only legal conclusions. Plaintiffs do not even properly allege that any negligence could be attributed to ConocoPhillips at all, rather than to COPC, its Chinese subsidiary.

Under Texas law, "[a] negligence cause of action consists of three elements: 1) a legal duty owed to the plaintiff; 2) a breach of that duty by the defendant; and 3) the breach proximately caused the plaintiff's injury." *N. Marine Underwriters, Ltd. v. FBI Express, Inc.*, 697 F. Supp. 2d 695, 703 (S.D. Tex. 2009). The same elements apply to negligence as a maritime tort. *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 211 (5th Cir. 2010). Although plaintiffs allege a laundry list of supposed duties of and shortfalls by ConocoPhillips (Compl. ¶ 67), not one is supported by any factual allegation of, *e.g.*, (1) what exactly ConocoPhillips did, (2) what ConocoPhillips had a duty to do differently, or (3) how the oil leakages could have been prevented if ConocoPhillips had taken any different action. Most of plaintiffs' allegations are expressed in the vaguest and most generic terms possible: for example, "Failure to take precautions to prevent environmental contamination," "Improper design and negligent construction of the well," or "Failure to adequately train employees." (Compl. ¶ 67.) These allegations are not well-pleaded facts, but bare assertions of legal conclusions. *Iqbal*, 556

---

[18] Plaintiffs bluntly ask this Court to "trump the closed, capricious character of the Chinese courts." ( Compl. ¶ 9.)

U.S. at 677-78; *In re Great Lakes*, 624 F.3d at 214 (affirming dismissal of maritime negligence claim for inadequate pleading).

Plaintiffs also fail to plead alternative theories of gross negligence and negligence per se. *See J.P. Morgan Chase Bank, N.A. v. Tex. Contract Carpet, Inc.*, 302 S.W.3d 515, 535 (Tex. App.—Austin 2009) ("[A] defendant cannot be grossly negligent without being negligent[.]"). "Gross negligence is 'an act or omission involving subjective awareness of an extreme degree of risk, indicating conscious indifference to the rights, safety, or welfare of others.'" *City of Dallas v. Hughes*, 344 S.W.3d 549, 554 (Tex. App.—Dallas 2011) (citation omitted). Plaintiffs' Complaint contains nothing rising to that level, and they plead no facts showing any breach with the requisite subjective awareness. To the extent plaintiffs allege that ConocoPhillips's actions were "reckless and wanton" (Compl. ¶ 72), that too is a legal conclusion, and carries no weight.

As for negligence per se, plaintiffs must show that ConocoPhillips acted in "violation of a statute or ordinance," that they are "within the class of persons which the ordinance was designed to protect," *Lopez-Juarez v. Kelly*, 348 S.W.3d 10, 27 (Tex. App.—Texarkana 2011) (citation and internal quotation marks omitted), and that their "injury is of a type that the statute was designed to prevent." *Powell v. Keeley*, 795 F. Supp. 2d 587, 592 (S.D. Tex. 2011) (citation and internal quotation marks omitted). Plaintiffs have pleaded nothing of the kind. Although they mention a number of Chinese statutes, they have not pleaded what standards of care, if any, arise from them, or the way any specific Chinese law requirements were violated. (Compl. ¶ 69.)

Besides the weaknesses in plaintiffs' pleadings, their allegations of negligence fail for the more fundamental reason that plaintiffs are suing the wrong defendant. Even if plaintiffs' Complaint set out sufficient well-pleaded facts to establish a cause of action for negligence, it would be a cause of action ***against COPC***, which conducted the relevant Chinese operations, not

[40]

ConocoPhillips.  "A bedrock principle of corporate law is that 'a parent corporation . . . is not liable' for actions taken by its subsidiaries."  *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 447 F.3d 411, 416 (5th Cir. 2006) (quoting *United States v. Bestfoods*, 524 U.S. 51, 61 (1998)) ("*Bridas II*"). "[P]iercing the corporate veil . . . is the rare exception, applied in the case of fraud or certain other exceptional circumstances."  *Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003). Corporate veils may be pierced under an "alter ego" theory "only if (1) the owner exercised complete control over the corporation with respect to the transaction at issue ***and*** (2) such control was used to commit a fraud or wrong that injured the party seeking to pierce the veil."  *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 359 (5th Cir. 2003) (emphasis added) (citing *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997)).[19]  Neither element has been pleaded adequately here.

First, the Complaint is devoid of any allegation that ConocoPhillips misused COPC's corporate form to commit a "fraud or wrong" against plaintiffs.  *See Bridas II*, 447 F.3d at 416. Veil piercing is appropriate only where the supposed wrongdoing for which suit is brought is "'***based on*** misuse of the corporate organizational form,'" not some underlying wrong to which veil piercing allegations are added.  *Tejas Inc. v. Siemers*, No. A-09-CV-0281 LY, 2009 WL 2762066, at *4 (W.D. Tex. Aug. 26, 2009) (emphasis added; quoting *Bridas II*, 447 F.3d at 417). A "generic allegation of wrongdoing" is not sufficient, *Mills v. Port Arthur, Tex.*, Civil Action No. 1:05-CV-298, 2006 WL 3531460, at *10 (E.D. Tex. Dec. 4, 2006); nor even is "proof of an underlying tort . . . claim," *In re CLK Energy Partners, LLC*, Bankruptcy No. 09-50616, 2010

---

[19] A federal veil piercing standard applies here because the case sounds in admiralty.  *Clipper Wonsild Tankers Holding A/S v. Biodiesel Ventures, LLC*, 851 F. Supp. 2d 504, 508 (S.D.N.Y. 2012) ("Federal courts sitting in admiralty must apply federal common law when examining corporate identity.") (citations omitted).  If Texas choice-of-law rules applied, Liberian veil piercing law would govern because COPC is incorporated in Liberia.  *See Alberto v. Diversified Grp., Inc.*, 55 F.3d 201, 204 (5th Cir. 1995) (applying law of state of incorporation of wholly-owned subsidiary to veil piercing claim); *ASARCO LLC v. Americas Mining Corp.*, 382 B.R. 49, 65 (Bankr. S.D. Tex. 2007) (same).  Even if the court looked to the law of ConocoPhillips's state of incorporation, Delaware law would apply.  Under no circumstances would Texas substantive law govern a veil piercing inquiry.

WL 1930065, at *7 (Bankr. W.D. La. May 12, 2010). Plaintiffs allege only that ConocoPhillips "exhibited a virtual total disregard of its subsidiary," (Compl. ¶ 61), an assertion that is flawed both because it is conclusory and because it has no bearing on the applicable legal standard.

*Second*, plaintiffs fail to plead ConocoPhillips's "complete control" over COPC. "To state a prima facie claim for alter ego liability, plaintiffs must make specific factual allegations from which alter ego status can be inferred; conclusory allegations are insufficient." *Emeraldian Ltd. P'ship v. Wellmix Shipping Ltd.*, No. 08 Civ. 2991 (RJH), 2009 WL 3076094, at *3 (S.D.N.Y. Sept. 28, 2009). The Fifth Circuit considers a non-exhaustive list of factors to determine whether one company exercises "complete control" over another.[20] Plaintiffs have not adequately pleaded these factors. For example, plaintiffs' Complaint is devoid of any allegations that COPC operates with grossly inadequate capital; that COPC receives no business except that given to it by ConocoPhillips; that ConocoPhillips uses COPC's property as its own; that the daily operations of the two corporations are not kept separate; or that COPC does not observe basic corporate formalities. *See Oxford Capital Corp.*, 211 F.3d at 284 n.2.

Without more, the allegation that COPC is a wholly-owned subsidiary of ConocoPhillips, (Compl. ¶ 59), is insufficient. *See Jon-T Chems., Inc.*, 768 F.2d at 691. Similarly, the allegations that ConocoPhillips had the right and power to direct and control COPC, and that it exercised that right and power (Compl. ¶ 59), and that ConocoPhillips exhibited a "virtual total disregard of its subsidiary" (*id.* at ¶¶ 61-62), are nothing more than legal conclusions (invoking

---

[20] That list includes whether: (1) the parent and the subsidiary have common stock ownership; (2) the parent and the subsidiary have common directors or officers; (3) the parent and the subsidiary have common business departments; (4) the parent and the subsidiary file consolidated financial statements and tax returns; (5) the parent finances the subsidiary; (6) the parent caused the incorporation of the subsidiary; (7) the subsidiary operates with grossly inadequate capital; (8) the parent pays the salaries and other expenses of the subsidiary; (9) the subsidiary receives no business except that given to it by the parent; (10) the parent uses the subsidiary's property as its own; (11) the daily operations of the two corporations are not kept separate; and (12) the subsidiary does not observe the basic corporate formalities, such as keeping separate books and records and holding shareholder and board meetings. *Oxford Capital Corp. v. United States*, 211 F.3d 280, 284 n.2 (5th Cir. 2000); *United States v. Jon-T Chems., Inc.*, 768 F.2d 686, 691-92, 694 (5th Cir. 1985).

the wrong legal standard).  "Conclusory allegations of alter ego status will not survive a motion to dismiss."  *Rolls-Royce Corp. v. Heros, Inc.*, 576 F. Supp. 2d 765, 789 (N.D. Tex. 2008) (citation and internal quotations omitted).

Having failed to present an adequately pleaded veil-piercing theory, plaintiffs' claim for negligence against ConocoPhillips depends on their theory that ConocoPhillips is vicariously liable for the acts of COPC "under agency principles and the doctrine of *respondeat superior*." (Compl. ¶ 59.)  But that theory fares no better than veil piercing, and for much the same reason: the fundamental requirement for vicarious liability is a right of control over the details of the allegedly negligent agent's work, and without such control, there can be no negligence liability for the principal.  *Johnston v. Oiltanking Houston, L.P.*, 367 S.W.3d 412, 420 (Tex. App.— Houston [14th Dist.] 2012); *Barbetta v. S/S Berm. Star*, 848 F.2d 1364, 1370 (5th Cir. 1988) (applying maritime law).

> **c.**   **Plaintiffs fail to plead the property interest required to show nuisance, which also is not a recognized admiralty cause of action (Second Cause of Action).**

Plaintiffs' effort to plead public and private nuisance claims under Texas law (*see* Compl. ¶¶ 73-85) must be dismissed because they have failed to plead the necessary injury to property interests.  That defect exists under both Texas law, which plaintiffs attempt to invoke, and federal maritime law, which does not recognize nuisance claims as a maritime tort at all.[21]

To state a public nuisance claim under Texas law, plaintiffs must plead an "unreasonable interference with a right common to the general public," 54 Tex. Jur. 3d Nuisances § 7, and in suits by private parties such as plaintiffs, must also plead "***special injury***," distinct from injury to the public at large.  *Jamail v. Stoneledge Condo. Owners Ass'n*, 970 S.W.2d 673, 676 (Tex.

---

[21] For the reasons discussed above, plaintiffs' failure to allege ConocoPhillips' liability under a veil-piercing or vicarious liability theory is fatal to its nuisance claims as well.

App.—Austin 1998) (emphasis added).  A "special injury," in turn, is an interference with "some property right of [the plaintiff's]."  *McQueen v. Burkhart*, 290 S.W.2d 577, 579 (Tex. App.—Austin 1956) (quoting *Ingram v. Turner*, 125 S.W. 327, 329 (Tex. Civ. App. 1910)).  A private nuisance, meanwhile, is "a nontrespassory invasion of another's interest in the private use and enjoyment of **land**."  *Kane v. Cameron Int'l Corp.*, 331 S.W.3d 145, 147 (Tex. App.—Houston [14th Dist.] 2011) (emphasis added).

Plaintiffs here have failed to plead specific injury to a property right.  Plaintiffs allege only that they "seed" or "plant" the Bohai Sea with sea cucumbers and sea scallops.  (Compl. ¶ 11.)  But that hardly presents any basis for inferring a property right: sea cucumbers and scallops are wild animals, particularly when released into the open sea; no property interest exists in them until they are caught.  *See Coastal Habitat Alliance v. Pub. Util. Comm'n of Tex.*, 294 S.W.3d 276, 287 (Tex. App.—Austin 2009) ("[U]nder state law, no vested property interest exists in wild animals.").  *A fortiori* plaintiffs' alleged efforts cannot rise to the level of any property interest in stretches of open sea, particularly considering that Texas law presumes that submerged land is not private property at all.  *Landry v. Robison*, 219 S.W. 819, 820 (Tex. 1920) (discussing the public trust doctrine).  Plaintiffs do not allege any ownership of the sea cucumbers or scallops under Chinese law, any licenses or permits they might hold that grant special rights to possess the areas they fish, any Chinese leases in any affected fisheries or hatcheries, or anything else that might conceivably amount to the ***property right*** that Texas law requires.

Moreover, under applicable maritime law, nuisance is not even a cognizable cause of action.  In the maritime context, courts in the Fifth Circuit have consistently "declined to recognize[]" nuisance torts, *In re Deepwater Horizon*, MDL No. 2179, Nos 10-4182,  10-4183,

[44]

10-3059, 11-516, 2011 WL 5520295, at *13 (E.D. La. Nov. 14, 2011), and dismiss both public and private nuisance claims on that basis. *Sekco Energy, Inc. v. M/V Margaret Chouest*, 820 F. Supp. 1008, 1013-14 (E.D. La. 1993) (dismissing public nuisance maritime tort claim because no such federal cause of action exists); *In re Deepwater Horizon*, 2011 WL 5520295, at *13 (dismissing both public and private nuisance claims).

### d. Plaintiffs allege no ownership or right to possess land, nor its intentional invasion by ConocoPhillips, to establish trespass (Third Cause of Action).

Plaintiffs' claim against ConocoPhillips for trespass (*see* Compl. ¶¶ 86-88) fails for similar reasons.  *First*, under maritime law, plaintiffs have failed sufficiently to allege an intentional trespass.  *Second*, any negligent trespass claim must be dismissed because it amounts to nothing more than a maritime negligence claim, which plaintiffs have failed adequately to allege.  *Finally*, even if Texas law could conceivably apply, the trespass claim should be dismissed because plaintiffs do not allege any right to possess land or other property interest.

As discussed above, plaintiffs cannot bring a trespass claim under Texas law because federal maritime law preempts state law trespass claims.  *See Marastro Compania Naviera, S.A. v. Canadian Mar. Carriers, Ltd.*, 959 F.2d 49, 53 (5th Cir. 1992) (holding that "general common law" and the *Restatement (Second) of Torts* "should control to determine the law of maritime trespass, in order to promote uniformity in general maritime law"); *In re Deepwater Horizon*, 2011 WL 5520295, at *13; *Nissan Motor Corp. in U.S.A. v. Md. Shipbuilding & Drydock Co.*, 544 F. Supp. 1104, 1111 (D. Md. 1982) ("[I]f different ports were to have different local rules concerning whether legitimate maritime activity amounted to a trespass or a nuisance, the smooth flow of maritime commerce would be adversely affected.").

While maritime law recognizes intentional trespass, *see In re Deepwater Horizon*, 2011 WL 5520295, at *13, plaintiffs have pleaded no facts from which a plausible inference of intent

[45]

could be drawn, *i.e.*, facts from which it could be inferred that ConocoPhillips **intended** to release oil into the Bohai Sea. *Iqbal*, 556 U.S. at 687. To the contrary, plaintiffs allege at most that ConocoPhillips was **negligent** "in the drilling, construction, and operation of the Penglai 19-3 oil field wells." (Compl. ¶ 66.) Accordingly, plaintiffs' (intentional) trespass claim should be dismissed. *See In re Deepwater Horizon*, 2011 WL 5520295, at *13 (dismissing maritime law intentional trespass claim for failure to plead intentional conduct).

"As to unintentional trespass, . . . except in instances involving ultra-hazardous activity, a defendant is liable only when his conduct is negligent, and only for the harm caused to the land, the possessor, or a thing or third person in whose security the possessor has a legally protected interest." *Id.* (citing *Restatement (Second) of Torts* § 165). Offshore drilling activities are not ultra-hazardous. *See Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548, 550 (5th Cir. 1987); *In re Deepwater Horizon*, 2011 WL 5520295, at *13. Thus, a negligent trespass claim is "effectively absorbed into general maritime law negligence, as both [trespass and negligence] require negligent conduct and both require physical injury to a proprietary interest or personal injury." *Id.* Because the "trespass claim is effectively the same as one for negligence" it should be dismissed. *Id.* (dismissing negligent trespass claim).

If Texas law could apply, plaintiffs' trespass claim would fare no better. Texas law requires that "(1) the plaintiff owns or has a lawful right to possess real property, (2) the defendant entered the plaintiff's land and the entry was physical, intentional, and voluntary, and (3) the defendant's trespass caused injury to the plaintiff." *Tex. Woman's Univ. v. The Methodist Hosp.*, 221 S.W.3d 267, 286 (Tex. App.—Houston [1st Dist.] 2006). Nowhere do plaintiffs allege that they had a lawful right to possess real property. Instead, plaintiffs allege "a property right or a **quasi-property** right in the Bohai Sea sea cucumber, scallop and other aquaculture

[46]

hatcheries." (Compl. ¶ 12 (emphasis added).) But plaintiffs do not allege any facts supporting the existence of such a property or "quasi property" right. Under both Texas law and Chinese law, commercial fishermen such as plaintiffs, do not have any real property interest in fishing.[22] Rather, under Texas law, commercial fishermen have a limited "public right" to make their living from the sea. *See Golnoy Barge Co. v. M/T Shinoussa*, 841 F. Supp. 783, 785 (S.D. Tex. 1993); *Blue Gulf Seafood, Inc. v. TransTexas Gas Corp.*, 24 F. Supp. 2d 732, 734 (S.D. Tex. 1998). In order to state a claim for trespass of this public right, plaintiffs would need to allege that they are licensed to ply their trade in Texas waters—something they have not done and cannot do. *See Golnoy Barge Co.*, 841 F. Supp. at 785 (holding unlicensed commercial fishermen, shrimpers, crabbers, and oystermen could not recover damages for lost economic benefits they had no legal right to fish in the first place); *Blue Gulf Seafood, Inc.*, 24 F. Supp. 2d at 734 (holding unlicensed foreign oystermen could not state a trespass claim).[23]

### e.    Plaintiffs do not allege they conferred on ConocoPhillips a benefit constituting unjust enrichment (Fourth Cause of Action).

Plaintiffs' effort to plead a claim for unjust enrichment under Texas law is fundamentally misguided. That theory does not authorize recovery for general unfairness or supposed harms associated with alleged "corner-cutting." (Compl. ¶ 90.) As the very case plaintiffs' cite in the Complaint makes clear (Compl. ¶ 91), under Texas law unjust enrichment is not an independent cause of action, but a quasi-contractual obligation that the defendant make restitution of a benefit received from the plaintiff. *See Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 164 (Tex. App.—El Paso 1997); *see also Archawski v. Hanioti*, 350 U.S. 532, 536 (1956) (same under maritime law).

---

[22] Because China's territorial waters belong to the State, a fisherman has "no ownership interest in the sea." (Decl. C (Li/Fu) ¶ 123.) Under Chinese law, a fisherman "***might*** have a legally protected interest in aquaculture hatcheries." *Id.* But to show such an interest, a fisherman would have to prove he has the required license to use the sea for hatchery business. (*Id.*) That issue would be better addressed to Chinese courts in any event.

[23] Plaintiffs' Texas trespass claim also fails because there are no plausible allegations of intentional conduct.

Unjust enrichment thus depends on showing the defendant obtained a benefit from the plaintiff by fraud, duress or taking undue advantage. *See Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). "To sustain an action for unjust enrichment, there must be some basis for the court to infer a promise on the part of the defendant to the plaintiff to pay for the benefit or property." *Mitsuba Tex., Inc. v. Brownsville Indep. Sch. Dist.*, No. 05-97-01271-CV, 2000 WL 122348, at *4 (Tex. App.—Dallas Feb. 2, 2000) (not designated for publication).

Plaintiffs do not allege anything approaching a contractual relationship with ConocoPhillips that would give rise to a quasi-contractual restitution obligation. Nor do they allege that they conferred any benefit on ConocoPhillips for which there is an implied promise to pay. Instead, they allege "corner-cutting" and cost avoidance. Any supposed enrichment to ConocoPhillips was not because plaintiffs gave something to ConocoPhillips. Plaintiffs fail to state a cognizable claim for unjust enrichment.

### f.    Plaintiffs' claim for equitable relief (Sixth Cause of Action) states no independent claim for relief.

What plaintiffs characterize as their "Sixth Cause of Action"—a request for equitable relief—is not a separate cause of action at all. "An injunction is a remedy, not a cause of action." *Rodriguez v. City of Laredo*, No. 5:06-cv-175, 2007 WL 2329860 at *1 n.1 (S.D. Tex. Aug. 13, 2007); *see also La. Crisis Assistance Ctr. v. Marzano-Lesnevich*, Civil Action No. 11-2102, 2012 WL 2717075 at *5 (E.D. La. July 9, 2012) ("[A] request for injunctive relief is not considered an independent 'cause of action,' but rather a remedy sought to redress the wrongs alleged in the underlying substantive claims."). Accordingly, plaintiffs' Sixth Cause of Action should be dismissed as a separate cause of action. *Motley v. Homecomings Fin., LLC*, 557 F. Supp. 2d 1005, 1014 (D. Minn. 2008) (dismissing "claim" for injunctive relief because it is not a separate cause of action).

[48]

## REQUEST FOR ORAL ARGUMENT

Pursuant to LR 7.5.A, defendant ConocoPhillips believes that oral argument would assist the Court in deciding the issues addressed herein, and respectfully requests oral argument.

## CONCLUSION

ConocoPhillips requests that this Court grant this motion to dismiss, dismiss all claims against it and award it all such other and further relief, both general and special, legal and equitable, to which it may be justly entitled.

Respectfully submitted,

**/s/ Martin D. Beirne**
**Martin D. Beirne**
Texas Bar No. 02055000
Southern District of Texas No. 3120
1300 Post Oak Boulevard, Suite 2500
Houston, Texas 77056
Tel. (713) 623-0887
Fax (713) 960-1527

**ATTORNEY IN CHARGE FOR DEFENDANT CONOCOPHILLIPS COMPANY**

[49]

**Of Counsel:**

BEIRNE, MAYNARD & PARSONS, L.L.P.
**David A. Pluchinsky**
Texas Bar No. 16074400
Southern District of Texas No. 9159
**Darin L. Brooks**
Texas Bar No. 00796252
Southern District of Texas No. 22788
**Kristen W. Kelly**
Texas Bar No. 24046198
Southern District of Texas No. 690180
1300 Post Oak Boulevard, Suite 2500
Houston, Texas 77056
Tel. (713) 623-0887
Fax (713) 960-1527

**Of Counsel:**
KIRKLAND & ELLIS LLP
**Brant W. Bishop, P.C.**
Southern District of Texas No. 724895
**Patrick Bryan**
Southern District of Texas No. 1572792
**Emily P. Hughes**
Southern District of Texas No. 1572784
655 Fifteenth St., N.W.
Washington, D.C. 20005Tel. (202) 879-5000Fax (202) 879-5200

**Of Counsel:**

BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
**Sean C. Grimsley**
Southern District of Texas No. 1561634
**Glen E. Summers**
Southern District of Texas No. 598585
**Daniel R. Brody**
Southern District of Texas No. 37820
1899 Wynkoop Street, Suite 800
Denver, Colorado  80202
Tel. (303) 592-3115
Fax (303) 592-3140

[50]

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of September 2012, a true and correct copy of the foregoing instrument was forwarded to the following counsel-of-record via certified mail, return receipt requested.

Thomas E. Bilek
Kelly Cox Bilek
THE BILEK LAW FIRM, L.L.P.
808 Travis, Suite 802
Houston, TX 77002

Stuart H. Smith
Michael G. Stag
John L. Fontenot
Sean Cassidy
SMITH STAG, L.L.C.
365 Canal Street, Suite 2850
New Orleans, LA 70130

            /s/ Darin L. Brooks
           Darin L. Brooks

[51]

1612352v.2  IMANAGE 106179