UNITED STATES DISTRICT COURT          SOUTHERN DISTRICT OF TEXAS

United States District Court
Southern District of Texas

**ENTERED**

November 08, 2016
David J. Bradley, Clerk

| | | |
|---|---|---|
| Peiqing Cong, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| *versus* | § | Civil Action H-12-1976 |
| | § | |
| ConocoPhillips Company, | § | |
| | § | |
| Defendant. | § | |

## Opinion on Dismissal

1.   *Introduction.*

Oil seeped from the seabed into a bay in China. Fishermen living along and working in it have sued an American oil company saying it is responsible. The American company is the parent of the parent of a Liberian company. The Liberian company has a joint interest in a mineral concession with the People's Republic of China. The joint venture's operation of the oil field may have damaged the fishermen's property interest in China. Before suing in Texas, the fishermen sought relief from the State Oceanic Administration of China and from a Chinese court of law. Both failed.

This suit is the result of hyperactive lawyers – not the greed of hard-working Chinese fishermen. The American lawyers have conceded that they have no knowledge of Chinese law nor records or statements from the fishermen – nothing from which they could have possibly evaluated the facts and law.[1] The fishermen's claims will be dismissed.

2.   *Background.*

The Bohai Sea is the northernmost gulf of the Yellow Sea on China's northeast coast. It borders the Chinese provinces of Liaoning, Shandong, and Hebei – just west of the Korean peninsula. China considers it to be her territorial waters. Parts of it are used for fishing and aquaculture, including the seeding and harvesting of scallops and sea cucumbers.

---

[1] Fed. R. Civ. P. 11.

The Bohai also has oil beneath its seabed. The Penglai 19-3 field is slightly east of its center, and the minerals are developed jointly by China National Offshore Oil Corporation with 51% – and ConocoPhillips China with 49%. ConocoPhillips China is a Liberian company with its headquarters in China. ConocoPhillips Company owns it through another company. ConocoPhillips China operates production platforms.

In June of 2011, oil and drilling mud seeped from the seabed in two places in the Penglai 19-3 field. After an investigation by China's State Oceanic Administration, ConocoPhillips China paid more than $350 million to the agency and the Ministry of Agriculture. Some of that money was to pay fishermen in the Hebei and Liaoning Provinces for their losses. Shandong Province was not included, but the ministry said that it would consider losses to other areas of aquaculture – if the fishermen could demonstrate compensable harm.

In November of 2011, thirty fishermen from Shandong petitioned Qingdao Maritime Court for permission to sue ConocoPhillips China for losses to scallops and sea cucumbers in their province. They also asked the State Oceanic Administration and ConocoPhillips China to create a fund for Shandong. The court has not yet ruled on the petition, and the Chinese agencies have not responded to the request for a fund.

3.    *Legal Theories.*

Thirty fishermen from Shandong have sued ConocoPhillips Company under six American legal theories. Because this is a dispute among three Chinese parties about Chinese waters, it belongs in China. The fishermen have sued here – and sued a remote relative of the proper defendant – to avoid their country.

A.    *Negligence.*

The fishermen say (1) ConocoPhillips China controls and operates the oil field; (2) oil and drilling mud seeped; (3) scallops and sea cucumbers were damaged; (4) ConocoPhillips China paid more than $350 million to the Chinese government; and (5) China has an administrative and judicial system that has authority over their seabed and claims.

The fishermen articulate no fact to support their claims that ConocoPhillips Company in Houston was negligent, negligent *per se*, or grossly negligent. They say that it did not:

- repair and maintain the platform;
- take precautions to prevent environmental contamination;
- respond to the spill promptly;
- design and drill the well properly;
- design and construct the cement works properly;
- monitor leaks;
- warn the people living along the Bohai Sea of the risk of spills;
- drill the well itself; and
- train its workers.

Assuming the fishermen could substantiate their claims of negligence, they cannot justify imposing liability beyond the entity that did the work. They have nothing to suggest that Company abused its corporate form by defrauding them. Besides showing that Company owns an indirect economic interest in a subsidiary, the fishermen have not shown Company's connection to the oil field's operation.

The fishermen say that Company admitted that it was responsible and that its subsidiary was a sham because Company's chief executive officer announced that it took responsibility for the spill. Just as an offer to pay medical bills is not an admission of liability, an after-the-fact press release announcing the creation of a compensation fund does not mean that Company is responsible for the spill or was negligent. The subsidiary owned the field, operated it, and paid into the compensation fund.

The fishermen say that Company was negligent because an oil spill "necessarily means" that precautions were insufficient. Oil may seep from the ocean even when an operator is careful. Woods Hole Oceanographic Institution has reported that natural oil seeps in the Santa Barbara Channel off California have released 8,200 tons of oil each year and have for thousands of years. National Academy of Sciences has reported that the 600 or so natural oil seeps in the Gulf of Mexico leak an estimated 735,000 tons per year. Natural seeps are found in many states. The La Brea Tar Pits on Wilshire Boulevard in western Los Angeles is one. In 1859, Edwin Drake drilled the first oil well in an area of natural seeps near Titusville, Pennsylvania.

The fishermen have offered nothing other than a list of abstractions that may be potential claims. There is no description about what happened; they identify no worker who was untrained, and no precaution not taken. Their claims will be dismissed.

B.     *Nuisance.*

The fishermen say that when Company polluted the sea, it ruined their scallops and sea cucumbers. They plead public and private nuisance under Texas law.

To claim a public nuisance, there must be an unreasonable interference with a right common to the general public.[2] In suits by private parties there must also be a special injury – interference with a property right of the fishermen – distinct from the injury to the public at large.[3] A private nuisance is the non-trespassory invasion of another's interest in the private use of land. As a prerequisite, the claimants must have a real-property right with which to interfere.

The fishermen say that they grow captive sea creatures in defined areas in the ocean where they have constructed hatcheries. They own the creatures, and they may own the hatcheries, which are physical pens. These are their property interests, if they exist under Chinese law.

The fishermen do not say they own or lease the seabed where they harvest.[4] The land is the patrimony of the People's Republic of China. It is public land; the fishermen have a license at best. The stock and the hatchery are personal property, not real property.

Because the fishermen do not have a real-property interest, their nuisance claims must be dismissed.


C.     *Trespass.*

As with their other claims, the fishermen have not pleaded specific facts that describe how Company – not the subsidiary – entered their land. Investors who have an interest in a trucking company are not liable when its truck accidentally drives into a wheat field.

Assuming the fishermen could prove that Company trespassed, they do not have a property right to support a trespass claim. Owning the scallops, sea cucumbers, and hatcheries is not enough; they must show ownership or possession of the land. They have not.

---

[2] Jamail v. Stoneledge Condo. Owners Ass'n, 970 S.W.2d 673, 676 (Tex. App.—Austin 1998).

[3] McQueen v. Burkhart, 290 S.W.2d 577, 579 (Tex. App.—Austin 1956); Ingram v. Turner, 125 S.W. 327, 329 (Tex. Civ. App. 1910).

[4] Ft. Worth & R. G. R. Co. v. Glenn, 80 S.W. 922, 993 (Tex. 1904).

Even if they had legal title, an action for damage done to land is purely local – it must be brought where the land is situated.[5] The fishermen must sue in China for trespass to Chinese land, if it is available there.

### D. Unjust Enrichment.

The fishermen say that Company was unjustly enriched at their expense because it saved money by not operating the platform safely. They misunderstand the nature of the claim.

One party must receive a benefit – be enriched – from another party. The first party's retention of the benefit is unjust because it would be unconscionable;[6] the benefit was received through fraud, duress, or an undue advantage.[7] A man who watches a worker paint his house, knowing that they do not have a contract, has received a benefit. Justice requires that he pay for the work.

The fishermen did not bestow a benefit on Company. They had no dealings with Company, much less gave it something that should be returned. Their unjust enrichment claim will be dismissed.

### E. Alien Tort.

The fishermen say Company's discharge of oil and waste into the sea violates the law of nations, international law, worldwide industry standards, and laws of the United States. They say that these violations are actionable under the Alien Tort Statute.[8]

The statute confers federal jurisdiction over torts that violate a treaty of the United States or customary international law. A private party has no right of action for violations of United States treaties unless the treaty is self-executing and provides for a private right of action.[9]

---

[5] Missouri Pac. Ry. Co. v. Cullers, 17 S.W. 19, 21 (Tex. 1891); Greenpeace, Inc. v. Exxon Mobil Corp., 133 S.W.3d 804, 809 (Tex. App.—Dallas 2004).

[6] Corpus Christi v. Heldenfels Bros., Inc., 802 S.W. 2d 35, 40 (Tex. App.—Corpus Christi 1990), aff'd, 832 S.W.2d 39 (Tex. 1992).

[7] Austin v. Duval, 735 S.W. 2d 647, 649 (Tex. App.—Austin 1987).

[8] 28 U.S.C. § 1350.

[9] Sosa v. Alvarez-Machain, 542 U.S. 692, 734 (2004).

The fishermen have not shown an actionable violation of a treaty. The treaties they cite either (a) have not been ratified by the United States or (b) are not self-executing.

The fisherman also have not pleaded an actionable violation of customary international law. While nebulous, the standard for a violation is high and defined by historical paradigms – classic examples are war crimes and piracy. Seeping oil is neither a historical violation nor specific, universal, and obligatory.

Even if there had been violations, they would not be actionable because they would have occurred within the territory of another sovereign. The fishermen's claims arise from an oil leak in territorial waters of China. The fishermen are Chinese, the platform is operated by a Liberian company headquartered in China under a joint venture with a Chinese government agency, Chinese territorial waters were polluted, and  damage occurred in China. The fishermen's claims do not touch and concern the United States or international law.[10] They will be dismissed.

4.    *Comity.*

Company says the fishermen's claims should be dismissed under the act-of-state doctrine and international comity. Both aim at the same idea – courts of one country should not sit in judgment of another sovereign's acts. Company says that this court should not interfere with the People's Republic of China's decision not to compensate the fishermen.

The fishermen say that their claims do not involve the Chinese government because they do not seek to question, join, or otherwise affect a Chinese proceeding. They narrowly characterize China's response to the spill. They admit that ConocoPhillips China reached an agreement with China to resolve claims from the oil spill. They complain that they were not included; this is a policy choice by China.

A fund was created to compensate those affected by the leak. Compensating some provinces but not others is inherent to the administration of the fund and government. Bringing claims in this court – after the Chinese government settled and decided who should be compensated – directly challenges the sovereign acts of the People's Republic of China, albeit collaterally.

If the court were to adjudicate the fishermen's claims, it would be ignoring China's determinations and administrative action – in essence telling the Chinese how to administer its justice – something this court is unwilling to do.

---

[10] Kiobel v. Royal Dutch Petroleum Co., 133 S.Ct. 1659, 1669 (2013).

5.    *Strike.*

This case has nothing to do with the United States or Company. The fishermen –
through factually-devoid pleadings and untenable legal theories – have attempted to litigate a
dispute that is in every conceivable way Chinese. This case is a strike suit – a suit filed not
because the courts are likely to think it meritorious but because the defendant seems likely to
settle on some terms rather than bear the expense of press releases.

"Of course it is error to deny trial when there is a genuine dispute of facts; but it is just
as much error – perhaps more in cases of hardship or where impetus is given to strike suits –
to deny or postpone judgment where the ultimate legal result is clearly indicated."[11]

6.    *Conclusion.*

The fishermen's claims against ConocoPhillips Company will be dismissed with
prejudice.

Signed on November 8, 2016, at Houston, Texas.

Lynn N. Hughes
United States District Judge

---

[11] Arnstein v. Porter, 154 F.2d 464, 480 (2nd Cir. 1946) (Clark, J., dissenting).